LUTHERAN EVANGELICAL CHURCH VS. GRISTGAU and others.

PLEADING. (1, 2) *Complaint liberally construed on demurrer* ore tenus.
INJUNCTION: (3) *Against unlawful interference with church property.* (4) *May restore plaintiff to its rights.* (5) *Grounds of the jurisdiction.* (6) *Motion for temporary injunction in this court denied.*

1. An objection to receiving any evidence in support of a complaint, on the ground that it does not state a cause of action, is in the nature of a demurrer *ore tenus* (*Rothe v. Rothe*, 31 Wis., 570), and upon such objection defendant is entitled to no advantage of his answer.

2. Upon such objection, taken for the first time at the trial, the pleading will be more liberally construed than where it is formally demurred to on the same ground. *Teetshorn v. Hull*, 30 Wis., 162.

3. In an action brought in the name of a religious society incorporated under the statute, the complaint avers (in substance) that defendants have secretly and fraudulently obtained possession of the church edifice, have put new locks and keys on the door thereof, and, refusing to admit the plaintiff by its regularly elected and qualified trustees and officers and members, have kept forcible possession of such edifice; that they have secretly possessed themselves of a portion of the church records, and kept the plaintiff, its trustees, officers and members, from access thereto and possession thereof; and that they threaten to take unlawful possession of the remaining records, and

of all the temporalities of the plaintiff, including the parsonage. *Held*, that the complaint states a *good cause of action for an injunction. Trustees v. Hoessli*, 13 Wis., 348.

4. By an injunction restraining defendants from further interfering with the property and temporalities of the society, the plaintiff, by its trustees, officers and members, may be restored to the peaceful possession of its rights, without any further order of the court, except a special order requiring defendants to restore that portion of the records of the society which they have taken.

5. The grounds upon which the jurisdiction of chancery is maintained in such cases, discussed per DIXON, C. J.

6. A motion in this court for a *temporary* injunction is denied, without prejudice, on the ground that it may better be made in the court below.

APPEAL from the Circuit Court for *Washington* County.

This was an action for an injunction to restrain the defendants from further interfering with or molesting the plaintiff, the *Lutheran Evangelical Church of Schleisingerville*, in the possession and enjoyment of its church property, records and temporalities. The complaint set forth the organization of plaintiff as a religious society in 1847, its corporation under the general law in 1853, its subsequent incorporation by an act of legislature in 1864, by the name above stated, the election of different boards of trustees for the management of its affairs, the donation and purchase of real estate for the purposes of the society, the erection thereon of a church edifice and parsonage, and the use of the property for the purposes of the church. It then set forth the election of the present board of trustees, April 14, 1873, alleging that they had ever since held in trust for the plaintiff the real estate, parsonage and church edifice, personal property, books and records of the society; that the society continued thenceforward in the occupancy of the property, held stated divine service, employed a pastor, and enjoyed the privileges to which it was entitled under its act of incorporation. The complaint then alleged that the defendants, on or about May 24, 1873, for the purpose of laying a foundation for usurping and interfering with the corporate name and inter-

ests of the plaintiff, fraudulently procured an oath signed and sworn to by all the defendants except one, to be recorded in the office of the register of deeds of Washington county, wherein defendants described themselves as president, secretary, deacon and wardens in " *The Lutheran Evangelical Church*, at the village of Schleisingerville;" that on the same day defendants pretended to elect themselves to said offices, but that the election was wholly unauthorized, irregular and void; that on April 14, 1873, there were seventy-one adult male members of plaintiff's society and congregation, and that on May 24, 1873, fifteen of said members, including the defendants, seceded from the society without cause, and had ever since refused to participate with the remaining members; that defendants, falsely pretending to be trustees of the church, by repeated · threats of violence and other intimidations had compelled the regular minister of the church, duly employed by the plaintiff and in good standing, to vacate the church and cease his ministrations, and that defendants had ever since continued their threats to keep out any pastor whom plaintiff might employ, so that the church had ever since been unable to procure any settled pastor, or to have any stated preaching; that · defendants threatened to take into their custody all the property, real and personal, and temporalities of the church, to transact all its affairs, and to prevent the employment of any pastor, or the practice of any rite, or the inculcation of any doctrine, except as defendants might dictate.

The complaint further alleged that on or about July 26, 1873, the defendants secretly and fraudulently obtained possession of the church edifice, put new locks and keys on the doors, locked and barred out plaintiff's trustees and members, and had ever since retained forcible possession, refusing to re-admit plaintiff's officers and members, or to deliver up the keys, though repeatedly requested; and that plaintiff had ever since been without any place for divine worship; that defendants had secretly possessed themselves of a portion of the church and society records of the plaintiff, preventing plaintiff

from access thereto, and claiming the right to make entries therein; that they threatened to reduce to their possession all the temporalities of the church, and had commenced suits at law to obtain the remaining records; that they had obtained and held the keys of the parsonage house, and threatened to take possession thereof and prevent plaintiff from using it, and to reduce to possession the remaining records, communion service and any other property of plaintiff over which they had not yet acquired control. Wherefore plaintiff prayed that defendants might be enjoined from using the corporate name of plaintiff, and from possessing or claiming to possess any of the property or temporalities of the church, and from in any manner intermeddling with the property or appropriating it, and from hindering plaintiff and its trustees in the enjoyment of their rights and franchises, and from occupying the pulpit of the church and interfering with the pastor, or in any manner impeding plaintiff in celebrating divine worship in the church, and from proceding in any suits at law to acquire possession of any of said property. The complaint further prayed that the defendants be required to surrender up the keys, records and all other property of plaintiff in their possession, and that a receiver be appointed if necessary.

A temporary injunction was allowed as prayed for, after which defendants appeared and answered. The cause coming on for trial, plaintiff offered evidence to sustain the complaint, to which defendants objected on the ground that the complaint did not state a cause of action. The court sustained the objection and dismissed the complaint, but directed that the temporary injunction be continued sixty days. From the judgment dismissing the complaint plaintiff appealed.

*Frisby & Weil* and *E. P. Smith*, for appellant, contended, *inter alia*, that the complaint showed an illegal usurpation by defendants of the powers of plaintiff's officers, and an intrusion into their offices, and an illegal use of the corporate name, which equity would redress. *Lawyer v. Cipperly*, 7 Paige,

281; *Gable v. Miller*, 10 id., 627 ; *Elders and Ministers, etc., v. Witherell*, 3 id., 296; *Kisor's Appeal*, 62 Pa. St., 428. The complaint shows a diversion of the trust by defendants, both as to the personal and real property, and an assertion of the right to direct the use of the same. Plaintiff had no adequate remedy at law, since an action of trespass would not prevent a recurrence of the *injury*, nor guard against the threatened danger, while an action of ejectment would only reach the question of the right of possession *pro tempore*, and would not quiet the title to the property. Hence equity must interfere. *Watson v. Sutherland*, 5 Wall., 74. The injury complained of would be irremediable; it was instant and threatening, and could not be compensated in damages. *Trustees v. Hoessli,* 13 Wis., 348. An injunction is the appropriate remedy for the illegal use of a corporate name, or for such an injury as can not be adequately compensated at law, or one which from its continuance must occasion a constantly recurring grievance. Mitf. Eq. Pl., 144, 145 ; *Mohawk, etc. R'y Co. v. Artcher*, 6 Paige, 83 ; *Parker v. W. L. C. and Woolen Co.*, 2 Black, 551 ; *Wardens, etc., v. Hall*, 22 Conn., 125 ; *Minot v. Curtiss*, 7 Mass., 441; *Trustees v. Hoessli, supra ;* Story's Eq., Jur., §§ 927–951 ; High on Injunctions, p. 319.

*Johnson & Rietbrock*, for respondent, argued that a party out of possession was not entitled to an injunction as against the party in possession. High on Injunctions, §§ 458–462, and cases cited ; Kerr on Injunctions, 287 et seq., and cases cited. There are several exceptions to the rule, but the complaint does not bring the case within these exceptions. The true test in every case of an application for an injunction to restrain trespassers is the existence or nonexistence of an adequate remedy at law. Courts of equity will not lend their aid for the protection of rights or the prevention of wrongs where the ordinary legal tribunals are capable of affording sufficient relief. High on Injunctions, § 30 ; *Coughron v. Swift*, 18 Ill., 414; *Winkler v. Winkler*, 40 Ill., 179. It is difficult to distin-

guish this case from *Lutheran Church v. Maschop*, 2 Stockt., 57, where an injunction was sought to restrain a pastor from using the pulpit of the church after he had been regularly deposed, but the relief was refused because defendant was a mere trespasser, and therefore amenable to an action at law. In this case there is nothing to distinguish the trespass complained of from an ordinary trespass at law, such as courts of law punish and courts of equity ignore. *Clark's Appeal*, 62 Pa. St., 447; *Bank v. Busey*, 34 Md., 437; *Hunnewell v. Charlestown*, 106 Mass., 350; *Owen v. Ford*, 49 Mo., 436; *Cobb v. Smith*, 16 Wis., 661.

DIXON, C. J. The only question argued in this case in support of the judgment appealed from, is as to whether the complaint states facts sufficient to constitute a cause of action in equity and for an injunction; and to that question the inquiries of the court will be limited. It is insisted, as the complaint shows the defendants to be mere wrong-doers, that it is but the ordinary case of an application to restrain trespassers against whom there exists an adequate remedy by action at law, and so equity is without jurisdiction. The points of dissimilarity between the facts set up in this complaint, so far as any question of the jurisdiction of equity or any of law arises upon them, and those stated in the complaint in *The Trustees, etc., v. Hoessli*, 13 Wis., 348, are so few and so slight as to leave little or no room for distinguishing the cases, or for saying that this case is not strictly ruled by that one. The only difference of averment in the respective complaints is, that while there it was alleged that the trespassing defendants had often interfered with the property held by the plaintiff in trust, and then threatened to take into their custody all the temporalities of the religious society plaintiff, and to transact all affairs relative thereto, the allegations here are that the defendants have secretly and fraudulently obtained possession of the church edifice, put new locks and keys on the doors thereof, and, refusing to readmit the plaintiff by its regularly elected and qualified

trustees and officers and by its members, have kept and main-
tained forcible possession of the same ; that they have secretly
possessed themselves of a portion of the church and society
records, and keep the plaintiff, its trustees, officers and mem-
bers, from access thereto or possession thereof; and that they
threaten to take or to gain unlawful possession of the remain-
ing records, and of all the temporalities of the plaintiff, in-
cluding the parsonage house or building owned by the plaint-
iff and occupied by the pastor of the society as a place of resi-
dence.     Such, in brief, are the trespasses and wrongs com-
plained of, and for which redress is sought by injunction in
this action.     Aside from the fact that possession has been tor-
tiously and surreptitiously gained of the church edifice, that is,
such possession as a building of the kind is capable of, and also
from the fact that the defendants have secretly possessed them-
selves of a portion of the society records, the facts now before
the court differ in no material particular from those there pre-
sented.  It is true, the defendants here have answered, meeting
the plaintiff's claim of legal right with a claim of legal right on
their part; but their counsel, in alluding to that as a circum-
stance of distinction, seems to forget the nature of the ques-
tion which is presented.  The question here is upon the suffi-
ciency of the facts stated in the complaint to constitute a cause
of action, and is the very same as if coming up on demurrer
interposed in writing, with this difference only, which makes
against the defendants, that, the objection being taken for the
first time at the trial, a more liberal rule of construction pre-
vails in support of the pleading than if it had been formally
demurred to.     *Teetshorn v. Hull*, 30 Wis., 162, 167.   The ob-
jection is in the nature of a demurrer *ore tenus* (*Rothe v. Rothe*,
31 Wis., 570) ; and the defendants can take no more advantage
of their answer than if it had not been put in.   The case might
have been brought to this court as well without the answer as
with it.

It appears to this court, therefore, that the difference between

this case and that of *The Trustees, etc., v. Hoessli* are not such as to justify the application of any different rule respecting the jurisdiction of equity, or to forbid or render unsuitable the remedy by injunction, either to stay the mischief or to restore the injured parties to their original condition. It appears to us that the same reasons, and all the reasons, which there existed for granting the relief in equity, exist also here. Upon the supposition, admitted to be correct for the purpose of the ob= jection now urged, that the defendants are mere tortfeasors, in-truders upon the temporalities of the society plaintiff, and usurp-ers of its corporate name, franchises, functions and offices, the case presented seems to be one proper for the writ of injunction, not only as a preventive, but also as a restorative process or remedy. The power of equity to restrain by injunction, and to make restoration, in cases of this nature, was distinctly asserted by this court in a very early. and well considered de-cision. *Putnam v. Sweet*, 2 Pin. Wis. R., 302 (1 Chand.; 286). The mandatory injunction, or that issued for the enforcement of rights after wrongs have already been committed, seems pe-culiarly suited to the facts and circumstances of this case, since, except as to the portion of the records of which the defendants are charged with having secretly obtained possession, the court will not be required to direct or compel the doing of any posi-itive act. The granting of the injunction in the ordinary form will operate to restore to the plaintiff the church edifice and all that has thus far been lost by the wrongful acts complained of, except that portion of the society records which have been secretly taken, and which may be provided for by special order. When the defendants are restrained from farther unlawful in-terference, the plaintiff, through its trustees, officers and mem-bers, may, without other or further aid or order of the court, take and maintain lawful and peaceful possession of the church edifice; and mandatory injunctions of this kind, or those oper-ating thus to restore the injured party to rights which were lost

or the enjoyment of which was suspended by wrongs previously committed, are not of unfrequent use and occurrence.

The true foundation of the powers of chancery, and the necessity for their exercise, are succinctly stated by Justice SHARSWOOD in *Roshi's Appeal*, 69 Pa. St., 462, 467, as follows : " If a private partnership or a corporation falls into confusion affecting all its members, there is no adequate remedy at law — no better remedy than a proceeding in equity to settle the rights of the parties, and to stay by injunction the inconvenience and disturbance caused by opposite factions pretending to act as the society." As in all good law, there is much sound philosophy and strong common sense in the above remarks, and especially when considered in their bearing upon these church controversies, which was the kind of case in which they were made. The learned judge then proceeds with a quotation of the language of Chief Justice LOWRIE in the leading case of *Kerr v. Trego*, 47 Pa. St., 295, where the chief justice says : " It is the very remedy usually adopted when churches divide into parties, and we applied it in three such cases in the last year. Therein we decide directly on the rights of the property, because that became the aim." Of what use, we ask, would be the remedy by ejectment to obtain possession of the church edifice, wherein, if the sheriff turned the trespassing parties out on Saturday night, they would in all probability be found in again on Sunday morning ? Of what availability or adequacy such a remedy, unless the sheriff were to do what could not lawfully be done, execute the process on Sunday, and not on one Sunday alone, but stand at the church door with a *posse comitatus* on every Sunday until the spirit of opposition and strife died out or was exhausted, which would probably never be ? We all know and history teaches too plainly the nature, workings and tenacity of these religious schisms and separations, to give any hope or reasonable ground of expectation for the efficacy of such a remedy. A breach, once effected, is seldom or

never closed, and unity never restored. The finer, more subtle and apparently unsubstantial the point of divergence respecting any matter of doctrine or question of faith, the greater the likelihood of continued diversity of opinion and of permanent division. The spirit of aggression and of resistance, of hostility and unyielding tenacity and opposition, and not unfrequently of most bitter hatred and open violence even, usually grows and gathers strength with the diminishing importance of the point in difference, until in most cases nothing, so far as temporal rights and temporal obligations are concerned, but the strong arm of the chancellor suffices for the protection of the one or the enforcement of the other. The noisy demonstrations, as shown by the affidavits in support of the motion for a temporary injunction in this court, made by these defendants at the church in exultation at their supposed victory over the plaintiff, and designed to aggravate and insult the trustees and parties engaged in the prosecution of this action, are but another among myriads of exhibitions of the same spirit which have taken place in the world. The courts, therefore, looking to the nature of these contests, the temporal spirit which they engender and the temporal wrongs and mischiefs which must ensue unless they are put down or held in check with the utmost promptitude and vigor, have at all times and with one accord asserted the prerogative of equity and maintained the power of the chancellor in the premises. One only intimation to the contrary, and that *obiter*, is found in the opinion of Chancellor WALWORTH in *Baptist Church v. Witherell*, 3 Paige, 296, the same having, however, been disregarded or overruled by the same learned judge in his elaborate historical opinion of church doctrines and creeds in *Gable v. Miller*, 10 Paige, 627. The only decision at all approximating to the opposite effect, which the industry and researches of the learned counsel for the defendants have been able to produce, is that in *Lutheran Church v. Maschop*, 2 Stockton Ch. R., 57, which was obviously correctly held

on the facts.    One man, against the entire membership of the society or church and its officers, trustees, deacons, elders, wardens, or by whatever name the officers may be called, can hardly be considered as forming a division or faction in the church ; and it needed not the remedy by injunction to keep the reverend defendant in that case out of the pulpit, should he have persisted in entering it against the will and wishes of the entire congregation and of everybody else.    The application for an injunction in such a case savored too much of the ridiculous to merit serious treatment.

On the whole case, therefore, and on all the authorities which have been numerously cited by counsel, this court is of opinion that the complaint states a good cause of action in equity, and for the remedy by injunction ; and this, whether the jurisdiction of the court is put on the ground above stated, or, as in some of the authorities, upon the ground of a trust, or of a suit to quiet title, or whether, as in others, it is held on the ground of the peculiar nature of the rights and of the property affected and for the time being put in jeopardy or rendered valueless by the trespasses complained of.

*By the Court.* — The judgment appealed from is reversed, and the cause remanded for further proceedings according to law.

The motion for a temporary injunction is denied, for the reason that the application can better be made to the circuit court, and without prejudice to such application.