STATE of Wisconsin and City of Milwaukee, Plaintiff-Respondents,

v.

Richard A. WELLER, d/b/a American Rentals, a/k/a Empire Developers, Defendant-Appellant,

GREAT MIDWEST SAVINGS & LOAN ASSOCIATION, a state chartered savings & loan association, Mortgagee-Defendant.†

Court of Appeals

*No. 82–236. Submitted on briefs October 13, 1982.— Decided November 22, 1982.*
(Also reported in 327 N.W.2d 172.)

† Petition to review denied.

For the appellant the cause was submitted on the briefs of *David M. Kaiser*, of Milwaukee.

For the respondents the cause was submitted on the brief of *Bronson C. La Follette*, attorney general, and *David J. Gilles*, assistant attorney general, and *James D. Brennan*, city attorney, and *Jeffrey A. Wagner*, assistant city attorney.

Before Decker, C.J., Moser, P.J., and Wedemeyer, J.

MOSER, P.J. Richard A. Weller (Weller) appeals from a judgment in favor of the State of Wisconsin (State) and the City of Milwaukee (City). Because we hold that the scope of the trial court's injunction is broader than is equitably necessary, we modify that part of the judgment and as modified, we affirm.

On July 9, 1980, the State and the City commenced this action against Weller alleging three claims for relief. The first claim sought civil forfeitures and injunctive relief because of Weller's violations of special order No. 1214.[1] The second claim sought abatement of the public

---

[1] The Department of Justice charged Weller with engaging in trade practices in violation of sec. 100.20(1), Stats. The matter was heard by a hearing examiner following which the Department of Agriculture issued special order No. 1214 on October 11, 1977. Special order No. 1214 was affirmed on appeal by the Dane County Circuit Court in case No. 160–804 on September 7, 1978, and modified by this court. *See Weller v. Department of Agriculture*, No. 78–813 slip op. (Wis. Ct. App. Mar. 26, 1980). Special order No. 1214 in compliance with the Court of Appeals decision in case No. 78–813 reads as follows:

nuisance caused by Weller's maintenance of his property pursuant to sec. 823.02, Stats. The third claim sought

IT IS ORDERED That:

Respondent, Richard A. Weller, d/b/a Empire Developers, from and after date of this order, is prohibited from:

(1) The rental of property for residential purposes without prior disclosure to prospective tenants of all existing Milwaukee housing code violations affecting the property, of which notice has been received from Milwaukee housing authorities. Disclosure shall be made by exhibiting to prospective tenants, prior to the time a rental agreement is entered into, a copy of any applicable housing code violation notice showing defects or deficiencies which have not been fully corrected. Disclosure shall also be made of other uncorrected defects, of which respondent has knowledge, substantially affecting habitability, as measured by housing code standards, even though no housing code violation notice or order may have been issued with respect to such defects.

(2) The making of promises or representations in connection with the rental of dwelling units for residential purposes that the units will be cleaned up or repaired prior to occupancy, or that certain specified repairs will be made prior to occupancy, and failing to perform them as agreed. Respondent is also prohibited from making any other promises or representations during the course of tenancy that certain specific repairs will be made without completing them within a reasonable amount of time, or as otherwise agreed.

IT IS FURTHER ORDERED That the respondent:

(3) Instruct or advise tenants in writing, prior to or at the time of entering into any rental agreement for the rental of residential units, as to how he can be contacted with respect to needed repairs, to include business name, address and telephone number. Respondent shall further instruct tenants, orally or in writing, as to their duty to pay rent, and of their liability for tenant neglect or damage.

(4) Maintain records of complaints from tenants during the period of their occupancy, to include records of repair actions taken with respect to such complaints.

(5) Upon receipt of complaints affecting heat, light, water and plumbing, enter into a reasonable understanding with the complaining tenant as to when repairs, if needed, will be completed.

(6) On receipt of requests from tenants, at termination of tenancy, for return of security deposits, either return the deposit

to have the specific properties repaired pursuant to sec. 823.22.

Following a nineteen-day trial, the trial court found, in its September 9, 1981, findings of fact, that prior to the commencement of this action and during its pendency, Weller's properties contributed substantially to the deterioration of the Milwaukee neighborhoods in which they were situated and that they substantially affected the public interest, health, safety and welfare of the occupants of the properties and the community. The trial court also found that Weller had continuously acted in bad faith by failing to comply with ch. 51 of the City's housing code, special order No. 1214 and other City regulations concerning the maintenance of buildings. The trial court further found that Weller had failed to comply with its own temporary restraining order in a number of instances. It further found that Weller's open, continuous and repeated violations of the City's housing code constituted a public nuisance and that this conduct would continue in the future.

In its September 9, 1981, conclusions of law the trial court determined that Weller's repair practices constituted a public nuisance under sec. 823.02, Stats., because they were detrimental to the health and safety of the tenants and the public and they were contrary to public

or account to the requesting tenant, in writing, of the reasons for retention of the security deposit. The deposit shall be returned or an accounting submitted to the tenant within 30 days after receipt of the request. If the security deposit is retained in whole or in part, because of tenant damage, a statement shall be included listing damages caused by the tenant and necessary cost of repair.

(7) Answer all complaints received by taped telephone message within a reasonable time after they are recorded. Priority shall be given to complaints affecting heat, light, water and plumbing.

(8) Cancel rental contracts and return advance rental payments on request of contracting tenants if, prior to scheduled date of occupancy, the property has not been cleaned or placed into a habitable condition.

policy. It also determined that, unless enjoined, Weller would probably continue this practice. The trial court reviewed the thousands of housing code violation orders that Weller ignored. It also noted that Weller had ignored complying with special order No. 1214, and he had ignored the temporary restraining order of the trial court. Upon this review of Weller's past conduct, the trial court concluded that there was no adequate remedy at law and that the State and City were entitled to a permanent injunction to abate this nuisance, pursuant to sec. 823.02. The trial court ordered a receivership over Weller's properties pursuant to sec. 823.22.

In its conclusions of law, the trial court also noted facts previously found concerning Weller's treatment of a number of his tenants which were in direct contradiction to special order No. 1214. The trial court concluded that Weller intentionally disregarded special order No. 1214. The record reflects that three of the incidents which violated special order No. 1214 took place after the second amended complaint was filed on October 28, 1980. The trial court assessed civil forfeitures for these violations. We note that it is only these three postcomplaint forfeitures that Weller can legitimately complain of because Weller had notice of all previous claims against him.

On September 14, 1981, the trial court entered an order appointing attorney John Schaller receiver over Weller's properties. By an order entered September 21, 1981, Weller was required to tender $5,000 to the receiver in two payments, and to further provide the receiver with a list of rental properties and the rent rolls. That order also required the receiver to have the properties appraised to determine what repairs were necessary to comply with the various building code violation orders. That order further required Weller to collect the rents and pay the proceeds to the receiver.

On December 18, 1981, an order was entered requiring Weller to pay $80,500 as forfeitures, for violating special order No. 1214, pursuant to sec. 100.26(6), Stats. Judgment was entered December 18, 1981, from which Weller appeals.

Further facts will be delineated as are necessary during the discussion of the issues.

Weller raises the following issues on appeal:

1. whether the trial court erred in assessing forfeitures for violations of special order No. 1214 which occurred subsequent to the commencement of the action;
2. whether the amounts of the individual forfeitures were excessive and unreasonable thereby constituting an abuse of discretion;
3. whether the trial court's permanent injunction restraining Weller from engaging, in any manner in the future, in the residential rental business, without prior approval of the trial court, was overbroad; and,
4. whether the trial court erred in not allowing Weller to choose the means to abate the nuisance created by his rental business practices.

## POSTCOMPLAINT FORFEITURE

Weller argues that the trial court erred when it awarded forfeitures for violations which occurred after the commencement of this action. We disagree.

Prior to addressing this argument we note that Weller did not present this issue to the trial court. Generally, appellate courts will not entertain or consider matters brought for the first time on appeal.[2] However, this rule is one of administration and does not limit an appellate court's power to decide such issues in proper cases.[3]

[2] *Mazurek v. Miller*, 100 Wis. 2d 426, 435, 303 N.W.2d 122, 127 (Ct. App. 1981).

[3] *Brown County v. DHSS Dep't*, 103 Wis. 2d 37, 42, 307 N.W.2d 247, 250 (1981).

While we could reject this issue, we feel that it is important and we will address it.

This action was commenced on July 8, 1980. This action was tried on the basis of a second amended complaint filed October 28, 1980. The second amended complaint, in paragraph ten, clearly alleges that Weller, unless enjoined, will continue to engage in future violations of special order No. 1214. We hold that the trial court was correct in assessing forfeitures for violations occurring after the complaint was served on Weller because he was aware, from the complaint itself, that the state claimed that these violations were continuous and would continue in the future.[4]

## ABUSE OF DISCRETION

Weller next argues that the trial court abused its discretion because the penalties assessed were excessive and unreasonable. We disagree.

The trial court based the amount of the forfeiture according to when the violation of special order No. 1214 occurred. Violations occurring before the commencement of the action were assessed a forfeiture of $2,500 per violation. Violations occurring after the complaint, but before the entry of the temporary injunction, were assessed a forfeiture of $4,000 per violation. Violations occurring after the entry of the temporary injunction were assessed a forfeiture of $5,000 per violation. Weller maintains that this method of assessing forfeitures was arbitrary and unreasonable. We disagree.

Violation of the unfair business and trade practices statute[5] allows the state to recover civil forfeitures of

---

[4] *See Village of Sister Bay v. Hockers*, 106 Wis. 2d 474, 479–80, 317 N.W.2d 505, 507–08 (Ct. App. 1982).

[5] Sec. 100.20, Stats.

not less than $100 nor more than $10,000 for each violation of an injunctive order.[6] We determine that special order No. 1214 was such an order. Weller also was subject to a temporary injunction entered by the trial court November 14, 1980, restraining the same conduct as did special order No. 1214. The legislative intent to deter conduct which violates agency orders promulgated under sec. 100.20, Stats., is recognized by this court.[7]

The assessment of forfeitures within the statutory range lies within the sound discretion of the trial court.[8] The trial court made meticulous findings of fact documenting Weller's violations. The trial court noted that Weller, at all times, totally disregarded special order No. 1214 and the temporary injunction of the trial court. The trial court concluded that at all times Weller acted in *bad faith* when he flagrantly and utterly disregarded these standards for human habitation established for his rental properties. Accordingly, we hold that there was simply no abuse of discretion because the forfeitures set by the trial court were well within the limits set by the legislature.

## SCOPE OF THE INJUNCTION

Weller next argues that the trial court erred when it permanently enjoined him from ever entering the residential rental business again without prior approval of the trial court. We agree.

After reviewing the record, we are fully cognizant that Weller's past conduct from 1974 through the close of

---

[6] Sec. 100.26(6), Stats.

[7] *See State v. Balistreri,* 87 Wis. 2d 1, 8, 274 N.W.2d 269, 272 (Ct. App. 1978).

[8] *State v. City of Monona,* 63 Wis. 2d 67, 72, 216 N.W.2d 230, 232 (1974); sec. 778.06, Stats.

this case demonstrates a complete disregard and an intentional avoidance of thousands of orders of the City's housing code authorities. It was this conduct which led to the issuance of special order No. 1214. We also are cognizant of Weller's utter disregard of special order No. 1214 and the trial court's temporary injunction. As a result of the proceedings in the trial court, all of Weller's properties in question in this action have been disposed of by sales held by the receiver pursuant to ch. 823, Stats., and the equitable powers of the trial court.

We hold that the scope of the trial court's injunction is broader than is equitably necessary. Injunctive relief is preventive, not punitive.[9] Because the nuisance was abated by the sale of Weller's properties, we are obliged to modify the trial court's judgment requiring Weller to obtain prior approval of the trial court before reentering the residential rental business.

## METHOD OF ABATING THE NUISANCE

Lastly, Weller argues that the trial court should have allowed him to fashion his own method of abating the nuisance. We disagree.

The record reflects that it was not until after Weller had ignored thousands of housing code violation orders, ignored special order No. 1214, and ignored the trial court's temporary injunction that a receiver was ordered to sell some of the properties and repair the remaining ones with the proceeds. The receiver was finally ordered to sell all of the properties. Weller maintains that ch. 823, Stats., does not give the receiver authority to sell his properties without "the request of and the approval of the owner."[10] We disagree.

[9] *United States v. Richards*, 201 Wis. 130, 138, 229 N.W. 657, 661 (1930).
[10] Sec. 823.22(3)(b), Stats.

The record clearly establishes that throughout the trial court proceedings Weller was given ample opportunity to repair his properties so as to preserve them for his and his wife's personal estate. It was not until after Weller refused[11] to honor a stipulation made on the record on January 22, 1982, for the sale of additional properties, that the trial court resorted to the drastic step of ordering the receiver to sell all of the remaining properties so as to abate the nuisance declared September 9, 1981.

Weller contends that sec. 823.22, Stats., acts as a legislative limit on the common law equitable power of a trial court to abate a public nuisance.[12] We disagree. We conclude that there is no conflict between the authority granted to a trial court to abate a public nuisance under ch. 823 and its authority to abate a public nuisance pursuant to its common law equitable powers, especially here where the trial court is attempting to eliminate outrageous conduct affecting the housing of human beings in violation of a city's housing code[13] and in violation of the public policy of this state concerning outrageous and unfair methods of competition in business and trade.[14]

Wisconsin has long held that a trial court vested with equitable powers may enjoin public or private nuisances.[15] A court of equity has always had a traditional power to adopt appropriate remedies to meet the exig-

[11] This refusal was made on the record January 27, 1982.

[12] Section 823.22(6), Stats., which reads in part: "[n]othing in this section relieves the owner of any property for which a receiver has been appointed from any civil or criminal responsibility or liability otherwise imposed by law . . . ," is illustrative of the fact that sec. 823.22(3)(b) does not set the limits of the trial court's power in these cases.

[13] Ch. 51 Milwaukee Code of Ordinances.

[14] Sec. 100.20(1) and (6), Stats.

[15] *Remington v. Foster*, 42 Wis. 608, 609 (1877).

encies of a case.[16]  It is not necessary for a complainant to exhaust all other remedies before a trial court may grant equitable relief.[17]

Here, the trial court's order instructing the receiver to sell the balance of Weller's property in order to effectuate its September 9, 1981, judgment abating a public nuisance was an appropriate remedy to meet the exigencies of this case.  This is especially true in light of Weller's continuous noncompliance with literally thousands of city housing code violation orders, his intentional noncompliance with special order No. 1214, his noncompliance with the trial court's temporary injunction and his refusal to comply with a stipulation that would have enabled him to retain some of the properties.  Weller's conduct evidences a callous disregard for the minimum standards established for human habitation contained in the City's housing code and the public policy of this state concerning unfair trade and business practices.  Accordingly, we hold that the trial court chose a proper method to achieve the abatement of this public nuisance.

*By the Court.*—Judgment modified and as modified, affirmed.

---

[16] *American Medical Serv. v. Mutual Fed. Sav. & Loan Ass'n,* 52 Wis. 2d 198, 205, 188 N.W.2d 529, 533 (1971).

[17] *See State v. Dairyland Power Coop.,* 52 Wis. 2d 45, 53–55, 187 N.W.2d 878, 882–83 (1971).