STATE of Wisconsin, Plaintiff-Respondent,

v.

Bernard SEIGEL, Liela Seigel and Jerry Seigel,
Defendants-Appellants.

Court of Appeals

*No. 90–1998. Submitted on briefs March 15, 1991.—Decided
June 19, 1991.*

(Also reported in 472 N.W.2d 584.)

873

On behalf of the defendants-appellants the cause was submitted on the briefs of *William A. Jennaro,* and *Laura E. Schuett* of *Cook & Franke, S.C.* of Milwaukee.

On behalf of the plaintiff-respondent the cause was submitted on the brief of *Robert J. Jambois,* district attorney.

Before Nettesheim, P.J., Scott and Anderson, JJ.

NETTESHEIM, P.J. Bernard Seigel, his wife Liela Seigel, and his cousin Jerry Seigel (the Seigels) appeal from a forfeiture judgment finding them in violation of sec. 167.10(2), Stats., which prohibits the sale of fireworks to persons not authorized to possess fireworks, and from an order granting a permanent injunction which imposes certain conditions on the Seigels' fireworks business. The court ordered the injunction pursuant to sec. 823.02, Stats., based upon its finding that the Seigels' three fireworks stores were public nuisances. The central issue on appeal is whether the Seigels were operating as *retailers or wholesalers* of fireworks when they sold fireworks to Illinois residents. We conclude that the trial court correctly construed sec. 167.10(4), which provides that sales of fireworks to nonresidents must be conducted on a wholesale basis. We also conclude that the trial court's findings that the Seigels were

engaged in the illegal retail sale of fireworks to nonresidents is not clearly erroneous. Therefore, we affirm the forfeiture judgment and the injunction order.

We recount the Seigels' business practices in some detail.[1] For several years, the Seigels have owned and operated three outlets for the sale of fireworks in the town of Bristol, Kenosha county. Each of the three stores—American Fireworks One, American Fireworks Two and American Fireworks (Stringer Stand)—is located just off Interstate 94, near the Wisconsin-Illinois border. Many of the Seigels' customers are Illinois residents.

American Fireworks One and Two are housed in permanent structures. The Stringer Stand, a seasonal outlet, consists of a tent and a trailer which are parked near the intersection of Highway 50 and Interstate 94, in the parking lot of a restaurant. The bulk of the Seigels' sales occurred during the month of June and in the days directly preceding the Fourth of July holiday. Sales were particularly brisk on weekends during this period.

Section 167.10, Stats., establishes three tenets of Wisconsin fireworks law: (1) no person may possess or use fireworks without a permit, sec. 167.10(3); (2) novelty items may be possessed or used without a permit, *see* sec. 167.10(1) and (3); and (3) sales of fireworks to nonresidents must be conducted only on a wholesale basis, sec. 167.10(4). Each of the Seigels' three stores

---

[1]Most of the facts are taken from a stipulation entered into by the parties on May 15, 1990. At trial, the state presented its case-in-chief by introducing these stipulated facts into evidence. The evidence was not, however, restricted to this stipulation: the Seigels called several witnesses and introduced several exhibits into evidence.

offered both fireworks and novelty items for sale.[2] The layout of the Seigels' stores reflected their attempts to comply with the requirements of sec. 167.10. The Seigels kept and displayed the fireworks apart from the novelty items. Indeed, in each store, the fireworks were cordoned off from the novelty items with either a rope or a fence. Additionally, the fireworks sections were marked with signs which stated "wholesale only." Two prices were displayed for each item—the retail price and the wholesale price.

The Seigels properly refused to sell fireworks to Wisconsin residents who did not have a permit. The Seigels would, however, sell fireworks to nonresidents who did not have permits and who were over the age of eighteen as established by valid identification. These transactions lie at the heart of the instant prosecutions. The Seigels contend that these sales to nonresidents were wholesale transactions. The state contends otherwise.

Section 167.10(4), Stats., which governs the sale of fireworks to nonresidents, requires not only that such sales be on a wholesale basis, but also that the items purchased be delivered to the customer by common carrier or an equivalent private shipper. Accordingly, the Seigels adopted various approaches to these transit requirements. The Seigels shipped some purchases to nonresident buyers via United Parcel Service. If a non-

---

[2]Section 167.10(1), Stats., defines fireworks by negative inference as being

> anything manufactured, processed or packaged for exploding, emitting sparks or combustion which does not have another common use, but does not include any of the following: [items listed in subs. (a) through (n) omitted].

The nonfireworks items listed in sec. 167.10(1)(a)–(n) are sometimes referred to as "nonpermit fireworks" or "novelty items."

resident customer arrived in a private automobile, the Seigels packaged the nonresident's purchases, placed them in a Seigel truck, drove the truck across the border and placed the purchases in the customer's car in the parking lot of an Illinois truck stop. If a nonresident customer arrived in a vehicle other than an automobile, the Seigels packed the fireworks in a sealed box or opaque plastic garbage bag and placed the parcel in the customer's vehicle.[3]

On June 30, 1989, the state brought a civil forfeiture action against the Seigels, alleging repeated violations of sec. 167.10, Stats., in connection with the sales period extending from June 4 to June 30, 1989.[4] This matter was assigned to the Honorable Bruce E. Schroeder.

Also on June 30, 1989, the state commenced an action under sec. 823.02, Stats., to enjoin the Seigels' business, on the grounds that it was a public nuisance. The state based this action on the alleged violations of sec. 167.10, Stats., set out in the civil forfeiture action. The state also made application for a temporary restraining order until such time as the nuisance claim could be heard on the merits. This nuisance action was assigned to the Honorable Robert V. Baker. Judge Baker granted a temporary restraining order that same day.

The two actions were consolidated before Judge Schroeder.[5] The matter was tried to the trial court with-

---

[3]Apparently, the Seigels believed that a motor vehicle other than an automobile qualified as an equivalent private shipper pursuant to sec. 167.10(4), Stats.

[4]An action brought pursuant to sec. 167.10, Stats., may be postured as either a civil forfeiture *or* a crime, depending upon the penalty sought. *See* sec. 167.10(9); *Cornellier Fireworks Co. v. St. Croix County,* 119 Wis. 2d 44, 47–48, 349 N.W.2d 721, 723 (Ct. App. 1984).

[5]The temporary restraining order remained in effect while

out a jury on May 15–17, 1990. In its decision,[6] the trial court factually determined that the transactions were retail sales, and, therefore, that the Seigels had violated the statute. The court imposed a $350 forfeiture.[7] Based on these findings, the court declared the Seigels' business a public nuisance, granted the county's application for permanent injunction, but allowed the Seigels to continue to operate subject to their adherence with conditions set forth in its order.[8]

---

both the civil forfeiture and public nuisance actions pended. In the period before consolidation, the Seigels brought a motion to dismiss the nuisance action on the grounds that the state was, in this instance, without standing to prosecute the matter. *See* sec. 823.02, Stats. The motion was denied, and the Seigels petitioned this court for leave to appeal. We granted the Seigels' petition, and in an unpublished opinion affirmed the order. *See State ex rel. County of Kenosha v. Bernard Seigel, et al.,* No. 89–1488–FT, unpublished slip op. (Wis. Ct. App. Jan. 17, 1990).

[6]The trial court issued a bench decision and a written "Judgment, Judgment of Conviction and Order." This latter document recited additional rationale for the trial court's decision.

[7]In its complaint, the state sought a total forfeiture of $87,120 in connection with seventy-three counts alleged. At trial, pursuant to the state's motion, the trial court dismissed counts six through sixty-nine. Counts seventy through seventy-three were also dismissed, as the state presented no evidence to support them. The forfeiture penalty reflects minimum fines imposed in connection with counts one through five. The court elected to impose a minimum forfeiture because of what it termed the "huge economic loss" which the Seigels would suffer as a result of the imposition of the permanent injunction. The injunction, *inter alia,* required that the Seigels' entire stock of fireworks be seized and destroyed.

[8]Among the injunction's many conditions are the following: that the sale of fireworks to nonresidents be on a wholesale basis only, that wholesale be defined as "sale for resale," and that each such sale be in an amount not less than $500.

On appeal, the Seigels raise six interrelated issues: (1) whether the trial court properly prohibited the admission of certain evidence; (2) whether the trial court properly admitted into evidence a copy of the Illinois Fireworks Regulation Act; (3) whether the state was estopped from bringing this action; (4) whether the evidence was sufficient to support the finding that the Seigels were engaged in retail sales; (5) whether the issuance of a permanent injunction was an appropriate exercise of discretion; and (6) whether the terms of the permanent injunction are proper. We are unpersuaded by the Seigels' arguments, and affirm the judgment and order in all respects.

## ADMISSIBILITY OF EVIDENCE

The Seigels argue the trial court committed prejudicial error in refusing to admit into evidence a stipulation (hereafter the federal court stipulation) which they had previously entered into with certain state authorities. This stipulation concerned the Seigels' sales of fireworks to nonresidents. The Seigels contend that had this federal court stipulation been admitted into evidence, the state would have been estopped from alleging noncompliance with sec. 167.10, Stats., because the Seigels had relied in good faith on this stipulation. Additionally, the Seigels contend the court erred in admitting a copy of the Illinois Fireworks Regulation Action into evidence because it was not relevant.

The admission of evidence is within the discretion of the trial court and will not be overturned on appeal absent an abuse of discretion. *See State v. Mink,* 146 Wis. 2d 1, 13, 429 N.W.2d 99, 104 (Ct. App. 1988). We will sustain a discretionary act if the trial court exercised

its discretion in accordance with accepted legal standards and in accordance with the facts of record. *Id.*

We begin with the federal court stipulation. This agreement was the product of a 1987 action brought in the Federal District Court for the Western District of Wisconsin by the Seigels against certain state authorities.[9] In that action, the Seigels alleged that the state authorities were interpreting sec. 167.10, Stats., in a manner violative of the commerce clause of the United States Constitution.[10] The Seigels agreed with the state authorities to dismiss their action in exchange for clarification of the manner in which they would be allowed to ship their fireworks products to nonresident buyers. The trial court concluded that this federal court stipulation was irrelevant and refused to admit it into evidence. We agree.

Section 167.10(4), Stats., provides:

> This section does not prohibit a resident wholesaler, dealer or jobber from selling fireworks *at wholesale,* if that wholesaler, dealer or jobber ships or delivers the fireworks outside of this state in sealed opaque containers by, as defined in s. 194.01(1), (2) and (11), common motor carrier, contract motor carrier or private motor carrier engaged in the business of shipping or delivering property . . .. [Emphasis added.]

Thus, a merchant may run afoul of this statute in three ways: (1) the improper *delivery* of fireworks legitimately sold at wholesale; (2) the sale of fireworks at retail; (3) or *both* of the foregoing.

---

[9]Several other fireworks vendors joined with the Seigels as plaintiffs in this action.

[10]*See Cornellier Fireworks, Ltd. v. Fiedler, et al.,* No. 86-C-741-C (1987).

The federal court stipulation focused upon *method of transport and delivery*. These matters, however, were not relevant to the central question in this case—the Seigels' *method of sale*. We therefore concluded that the trial court did not abuse its discretion in refusing this evidence.

Even if the federal court stipulation had addressed the Seigels' method of sale, this would not have served to prove the facts of the alleged offenses *in this case*. The Seigels were charged with violating *the statute—not the stipulation*.

Next, the Seigels contend that it was error for the trial court to judicially notice a copy of the Illinois Fireworks Regulation Act. *See generally* sec. 902.02, Stats. The Seigels contend that the Illinois fireworks law is irrelevant to the question of whether they violated Wisconsin law.

In support of their argument, the Seigels point to Bernard Seigel's testimony that: (1) the Seigels had no knowledge of the Illinois law; (2) sec. 167.10, Stats., does not require such knowledge; and (3) out-of-state purchasers were required to sign a document which stated that they would obey all state and federal laws with respect to those fireworks.

While the Illinois law may be irrelevant to the matters addressed by Bernard Seigel's testimony, the Illinois law was directly relevant to the fundamental dispute in this case—whether the Seigels' sales were retail or wholesale. " 'Relevant evidence' means evidence having *any* tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Section 904.01, Stats. (emphasis added). Later in this opinion, we hold that wholesale means

883

"sale for the purpose of resale." The fact that Illinois law prohibits the sale of fireworks at retail renders it probative for it tends to refute the defense theory that the Seigels' Illinois customers were all vendors of fireworks at wholesale. Thus, this evidence was relevant to the question of whether the Seigels were engaging in wholesale or retail sales when they sold fireworks merchandise to these nonresident buyers.[11] The trial court did not err when making this evidentiary ruling.

## ESTOPPEL

The Seigels next argue that another stipulation (hereafter the state stipulation), which was received into evidence, estopped the state from prosecuting this action.

In 1983, the state brought an action against Bernard and Liela Seigel for the unlawful sale of fireworks. That matter was also resolved by an agreement whereby the state set out certain procedures which the Seigels agreed to follow in their fireworks sales. In exchange, the state dismissed the action.[12]

The Seigels contend that they have complied with this state stipulation, and, as such, the state is estopped from bringing the present action.[13] We disagree.

[11]We stress that the evidence is *relevant* on this question. This does not necessarily mean that it is *controlling* on the question.

[12]*See State v. Seigel,* No. 83–CM–282 and 83–CM–283 (1983).

[13]The state argues that the Seigels raise this issue for the first time on appeal. We disagree. At trial, the Seigels expressly referred to the estoppel implications of the state stipulation. In the face of this argument, the trial court ruled that the state properly pursued this action, despite the Seigels' attempts to comply with the stipulation. No waiver occurred.

A prosecutor is not empowered to bind the state to any agreement which permits persons to commit unlawful acts. *Cf. Krueger v. Krueger,* 133 Wis. 2d 269, 276, 395 N.W.2d 783, 786 (Ct. App. 1986); *see also Snyder v. Waukesha County Zoning Bd. of Adjustment,* 74 Wis. 2d 468, 476–77, 247 N.W.2d 98, 103 (1976); *City of Milwaukee v. Leavitt,* 31 Wis. 2d 72, 76–77, 142 N.W.2d 169, 171–72 (1966). Well intended though the parties to the state stipulation were, to the extent that the stipulation countenanced future violations of the law, it cannot preclude this prosecution.

Finally, we again observe as we did in conjunction with the federal stipulation that the state charged the Seigels with violating the statute—not the state stipulation.

## STATUTORY CONSTRUCTION

We now turn to one of the central issues on appeal—the meaning of the word "wholesale." The trial court ruled that under sec. 167.10, Stats., "[w]holesale means sale for resale." Using this definition, the court concluded that the Seigels illegally engaged in retail fireworks sales.

The construction of a statute and its application to a set of facts present a question of law—a matter reviewed by us without deference to the trial court's decision. *L & W Constr. Co. v. DOR,* 149 Wis. 2d 684, 688–89, 439 N.W.2d 619, 620 (Ct. App. 1989).

In construing a statute, the primary source is the statute itself. *White v. General Casualty Co.,* 118 Wis. 2d 433, 437, 348 N.W.2d 614, 617 (Ct. App. 1984). Section

167.10, Stats., contains no definition of the term "wholesale." In such a situation, words are construed according to their common and approved usage. *State v. Gilbert,* 115 Wis. 2d 371, 377–78, 340 N.W.2d 511, 515 (1983).

The Seigels correctly note that "wholesale" may be defined by giving the word its ordinary and accepted meaning. However, the Seigels then contend that the testimony of three of their witnesses,[14] the stipulated facts regarding their business practices, and various exhibits introduced into evidence, when taken together, establish this definition.

The Seigels' basic error is that evidence does not control an issue of statutory construction. Rather, the law has developed its own well-established rules in this area. Among these rules is that cited by the Seigels—the common meaning of words may be established by using a recognized dictionary. *Id.* at 378, 340 N.W.2d at 515; *Wilson v. Waukesha County,* 157 Wis. 2d 790, 795, 460 N.W.2d 830, 832 (Ct. App. 1990). We adopt as the definition of "wholesale" for purposes of sec. 167.10, Stats., the definition recited in *Webster's Third New International Dictionary* (17th ed. 1976) at 2611: "of, relating to, or engaged in the sale of goods or commodities in quantity for resale." This, of course, is essentially the definition used by the trial court. We note by way of contrast, that "retail" is defined in *Webster's* as "the sale of commodities or goods in small quantities to ultimate consumers." *Id.* at 1938.

---

[14]These witnesses were Bernard Seigel, another Wisconsin fireworks merchant Larry Cornellier, Sr., and Norman Cloutier, a professor of economics at the University of Wisconsin-Parkside.

## SUFFICIENCY OF EVIDENCE

With this definition of "wholesale" established, we turn to the Seigels' next principal argument on appeal—that the evidence does not support the trial court's finding that they engaged in retail—not wholesale—activity. A trial court's findings of fact will not be set aside unless they are clearly erroneous. Section 805.17(2), Stats.

The evidence established that American Fireworks One, American Fireworks Two and the Stringer Stand are in proximity to Interstate 94, easily accessible to Illinois citizens.[15] The stores have very large signs likely to attract the attention of passing motorists.[16] In addi-

---

[15]The Seigels suggest that the state has manufactured this fact because it is "allegedly cited at 51:38, 39 [but it] is . . . not cited on those pages" and they are "unaware of any place in the record that substantiates the statement[ ]." We note that the state has apparently made a typographical error: Bernard Seigel testified on two days of the trial. The first day's testimony may be found in Record 47. The second day's testimony may be found in Record 51. The proper record citation for the location of the stores is R:47.38–39, not R:51.38–39.

We also reject the Seigels' contention that the state improperly characterizes the frontage roads as in "proximity" to Interstate 94. Frontage roads are typically proximal to the roadways they front. As for the Stringer Stand, Seigel testified that it was located in the parking lot of the "Brat Stop" restaurant on Highway 50, "about two lots" west of a McDonald's restaurant. We take judicial notice of the fact that Highway 50 intersects with Interstate 94. *See* sec. 902.01, Stats.

[16]The Seigels argue that the state's record cite does not support this proposition. We disagree. The cited portion of the record contains Bernard Seigel's cross-examination wherein he identifies various photographs of the three business locations. We note that

tion, the record establishes that it is illegal to sell fireworks at retail in the state of Illinois; the bulk of the Seigels' fireworks sales were to Illinois residents; the busiest sales times occurred during June and July 1–4; the weekends during the June-July period were the busiest of all; that the three busiest days of the year were July 2, 3 and 4; the Seigels imposed a $35 minimum on sales of fireworks between June 1 and July 4 because "it got busy and hectic, [and] we couldn't deal with the small sales"; and that the Seigels would begin laying in stock in May.

Based upon the combination of these facts, the trial court concluded that the Seigels had engaged in retail sales to nonresidents. This finding, we conclude, is not clearly erroneous. The Seigels' reasoning to the contrary would have us conclude that there are a good many Illinois residents: (1) who make their living as wholesale merchants of fireworks; (2) who wait until July 2, 3 and 4 to make their wholesale purchases; (3) and who then resell in Illinois to other wholesalers since Illinois law precludes any other kind of fireworks sales. This interpretation of the evidence, we conclude, strains credulity.

The trial court's findings against the Seigels is bolstered when we add to this equation the location of the Seigels' stores. While location near a major transportation artery is not in and of itself indicative of retail sales, this fact cannot be considered in a vacuum. The stores are near the interstate, near the Illinois-Wisconsin border, and marked with prominent signs. One loca-

---

numerous photographs taken at each location are part of the record. The three buildings and their respective signs are among the photographs, and the signs are large. Given the proximity of the stores to the interstate, it is reasonable to deduce that motorists would notice such signs.

tion—the Stringer Stand—is located in the parking lot of a restaurant. A reasonable inference is that the locations, whether by design or accident, are likely to attract nonresident retail customers traveling in Wisconsin. Indeed, the bulk of sales were to nonresidents over the course of a holiday period. We conclude, therefore, that this additional evidence supports the trial court's determination that the Seigels engaged in retail sales of fireworks to nonresidents.

## THE PERMANENT INJUNCTION

The Seigels next contend the trial court's issuance of the permanent injunction constitutes an abuse of discretion.

Injunctive relief is addressed to the sound discretion of the trial court. *County of Columbia v. Bylewski,* 94 Wis. 2d 153, 163, 288 N.W.2d 129, 135 (1980) (quoting *Pure Milk Products Coop. v. National Farmers Org.,* 90 Wis. 2d 781, 800, 280 N.W.2d 691, 700 (1979)). A discretionary determination will be sustained where it is demonstrably made and based upon the facts appearing in the record and in reliance on the appropriate and applicable law. *Hartung v. Hartung,* 102 Wis. 2d 58, 66, 306 N.W.2d 16, 20 (1981).

The Seigels argue that although repeated violation of a criminal statute or statutes constitutes *per se* a public nuisance, *State v. H. Samuels Co.,* 60 Wis. 2d 631, 637, 211 N.W.2d 417, 420 (1973), the trial court's ruling cannot stand because its construction of the term "wholesale" "departs from [its] ordinary and accepted meaning" and because their sales practices were "thoroughly consistent with the behavior of a wholesaler

889

. . .." In other words, the Seigels argue no violations occurred. This, however, is nothing more than the Seigels' sufficiency of evidence argument revisited. We have already rejected the Seigels' interpretation of the evidence. We have also held that the court correctly construed the term "wholesale." Therefore, we conclude that the trial court did not abuse its discretion by imposing an injunction against the Seigels' activities.

Apart from the correctness of the injunction itself, the Seigels also maintain that the terms and conditions of the injunction are an abuse of discretion because they are at once unreasonable and an impermissible intrusion upon the legislative sphere. We address each contention in turn.

Injunctive relief is to be tailored to the necessities of the particular case. *Jacobs v. Major,* 132 Wis. 2d 82, 121, 390 N.W.2d 86, 100 (Ct. App. 1986), *modified on other grounds,* 139 Wis. 2d 492, 407 N.W.2d 832 (1987). This is especially true regarding permanent injunctions. *Id.* And, because injunctive relief is preventive, not punitive, the relief ordered may not be broader than equitably necessary. *State v. Weller,* 109 Wis. 2d 665, 674, 327 N.W.2d 172, 176 (Ct. App. 1982). The power to enjoin a public nuisance flows from the court's equitable powers. *Id.* at 675, 327 N.W.2d at 177.

The Seigels protest two of the injunction's conditions:[17] (1) that wholesale sales must be in amounts not

---

[17]The Seigels raise a third concern regarding the scope of the injunction which is, essentially, yet another appearance of their sufficiency of evidence argument. The Seigels maintain the injunction is unsupported by "the rational balancing of benefits and burdens" required under Wisconsin law. More particularly, the Seigels argue that the absence of a balancing exercise rests upon the trial court's assumption "that an injunction was justi-

less than \$500 per transaction, and (2) that all fireworks sold—as opposed to novelty items—are to be shipped to the purchaser via licensed commercial common or contract carrier regulated by the State Department of Transportation or the Interstate Commerce Commission.

As to the \$500 minimum sale condition, the Seigels argue that this is contrary to certain of their testimony that a wholesale/retail demarcation is not governed by a dollar figure or limit. This argument misses the mark for, yet again, the Seigels seek to convert the trial court's equitable/discretionary determination into a sufficiency of evidence question. A court's equitable powers are not so constrained.

The Seigels also seize upon an *arguendo* statement in the state's brief to the effect that it is possible that an amount less than \$500 but more than \$35—the Seigels' self-imposed minimum wholesale sale amount—might also serve to compel wholesale rather than retail sales. Not only do the Seigels read this observation out of context, but they again fail to recognize the discretionary nature of the trial court's decision. Even though an amount less than \$500 may serve equally well to ensure that the Seigels' firework sales be on a wholesale basis, it remains that a trial court's exercise of discretion necessarily involves *choice among options.* The question is not whether another choice might pass muster, but rather whether the choice selected does. We conclude that the

fied simply because it had concluded that the defendants had repeatedly violated the statute," an unwarranted assumption given the trial court's "err[oneous]" construction of the term "wholesale." Again, in light of our discussion elsewhere in this opinion, this argument fails.

891

trial court's minimum sale amount is not an abuse of discretion.

The Seigels also challenge the trial court's injunction condition that they ship all fireworks via *commercial* common carrier. The Seigels argue that this requirement is unreasonable because they previously relied on and followed the federal stipulation's shipping requirements. However, we have already rejected the federal stipulation as controlling any aspect of these prosecutions.

The Seigels also complain that as a result of the federal stipulation's shipping requirement, that stipulation is followed by every county in Wisconsin save Kenosha. Here, however, the trial court was confronted with a public nuisance and the need to control and abate it. As a result, the trial court was free to fashion methods and remedies sufficient to curb the activity. Such is inherent in the very nature of an injunction. How other jurisdictions dealt with non-nuisance activity did not control the issue before *this* trial court.

The Seigels also contend that this shipping condition is unreasonable because it is "without statutory authority." The Seigels' argument suggests that where the object of an injunction is compliance with a statute, the injunction's conditions must mirror the statute. However, we know of no law (and the Seigels cite to none) which requires that the conditions of a valid injunction must be statutorily recognized.

The law, in fact, is directly to the contrary. A court's power to grant injunctive relief is not premised entirely upon statutory authority. *See generally Lutheran Evangelical Church v. Gristgau,* 34 Wis. 328 (1874). Wiscon-

sin courts may enjoin public nuisances pursuant to their vested equitable powers. *Weller,* 109 Wis. 2d at 675, 327 N.W.2d at 177. And because the power to enjoin public nuisances flows from equity, the courts possess the power to adopt appropriate remedies to meet the exigencies of a given case. *Id.* at 675–76, 327 N.W.2d at 177.

In the case at bar, it is clear that the statutory language alone was insufficient to exact the Seigels' compliance with its terms for the Seigels had violated the statute. Thus, in order to obtain and assure such compliance, the trial court was obliged to prescribe further reasonable conditions. These added injunctive conditions do not impermissibly invade the province of the legislature.

The injunction stands in all respects.

*By the Court.*—Judgment and order affirmed.