John GILLEN, Ann Gillen, William Dunwiddie, Friends of Our Neenah Parks and Clean Water Action Council of Northeastern Wisconsin, Inc., Plaintiffs-Appellants,

v.

CITY OF NEENAH, Minergy Corporation and P.H. Glatfelter Company, Defendants-Respondents.

Supreme Court

*No. 96–2470. Oral argument January 6, 1998.—Decided July 2, 1998.*

(On certification from the court of appeals.)

(Also reported in 580 N.W.2d 628.)

For the plaintiffs-appellants there were briefs by *William P. O'Connor, Rhea A. Myers* and *Jennifer S. McGinnity* and *Wheeler, Van Sickle & Anderson, S.C.*, Madison and oral argument by *William P. O'Connor.*

For the defendants-respondents, City of Neenah and Minergy Corporation, there was a brief by *James G. Gunz*, city attorney, Neenah; *Arthur J. Harrington,*

*Winston A. Ostrow, Michael B. Apfeld,* and *Godfrey & Kahn, S.C.,* Milwaukee and *James G. Schweitzer, Joseph R. Cincotta* and *Schweitzer and Cincotta, LLP,* Milwaukee and oral argument by *Michael B. Apfeld.*

For the defendant-respondent, P.H. Glatfelter Company there was a brief by *Mark A. Thimke* and *Foley & Lardner,* Milwaukee and *David G. Mandelbaum, Harry R. Weiss* and *Ballard, Spahr, Andrews & Ingersoll,* Philadelphia, PA and oral argument by *David G. Mandelbaum.*

Amicus curiae brief was filed by *John S. Greene,* assistant attorney general with whom on the brief was *James E. Doyle,* attorney general, for the State of Wisconsin.

Amicus curiae brief was filed by *Curt F. Pawlisch* and *Cullen, Weston, Pines & Bach,* Madison for The Wisconsin Alliance of Cities.

Amicus curiae brief was filed by *Curtis A. Witynski,* counsel, Madison for the League of Wisconsin Municipalities.

¶ 1. PER CURIAM. This is an appeal by the plaintiffs, John and Ann Gillen, William Dunwiddie, Friends of Our Neenah Parks and Clean Water Action Council of Northeastern Wisconsin, Inc., from a judgment of the circuit court for Winnebago County, Robert A. Hawley, Judge, granting motions to dismiss and motions for summary judgment for the defendants, City of Neenah, Minergy Corporation and P.H. Glatfelter Company. The circuit court dismissed the plaintiffs' complaint (as amended) with prejudice on several grounds, including that the plaintiffs lacked standing, failed to exhaust administrative remedies

and sought to assert rights in a derivative action that were not properly asserted in their pleadings.[1]

¶ 2. The court of appeals certified the following issue to the court: "Whether the public trust doctrine enables a citizen to directly sue a private party whom the citizen believes was inadequately regulated by the Department of Natural Resources?"

¶ 3. We hold that the plaintiffs may bring suit under Wis. Stat. § 30.294 (1993–94) against the defendants to abate a public nuisance.[2] For the reasons set forth, we reverse the judgment of the circuit court dismissing the complaint and remand the cause to the circuit court for further proceedings.

I

¶ 4. The dispute in this case concerns portions of Little Lake Butte des Morts in Winnebago County. In chapter 52, Laws of 1951, the legislature granted right, title and interest into certain submerged land near the south shore of Little Lake Butte des Morts (referred to as the Legislative Lakebed Grant) to the City of Neenah "for a public purpose."[3]

¶ 5. Beginning in 1951 and continuing through at least 1975, fill material consisting of sludge generated by the primary wastewater treatment system of Bergstrom Paper Company, the predecessor to P.H. Glatfelter Company, was placed in the Grant Area

---

[1] The circuit court examined the complaint (as amended) and the stipulation of facts.

[2] All references to the Wisconsin statutes are to the 1993–94 version unless otherwise indicated.

[3] The title to chapter 52, Laws of 1951, states that the grant of the submerged land to the city is "for a public purpose." The deed to the city repeats the title of the act but does not otherwise limit the use of the submerged land.

(that is, the area discussed in the Legislative Lakebed Grant). In addition, in 1951, 1974, and 1984 the City leased a certain portion of the Grant Area to the Bergstrom and Glatfelter Companies for construction and operation of a wastewater treatment plant and for vehicular parking. The Department of Natural Resources (the DNR), or its predecessor agency, had some knowledge of the development of the Bergstrom and Glatfelter Companies' facilities and was involved in reviewing and approving the wastewater treatment plant and paper sludge combustor.

¶ 6. In 1995 Minergy Corporation sought a lease from the City to construct and operate a commercial facility on approximately five acres of the Grant Area other than the area leased to the Bergstrom and Glatfelter Companies. The proposed Minergy facility would process paper sludge generated by paper mills in the Fox Valley area into a glass aggregate product.

¶ 7. In December 1995 the DNR, the City, Glatfelter Company and Minergy Corporation signed a stipulation and Settlement Agreement, which provided the following:

(1) The DNR asserted that both the proposed Minergy facility and the existing operations of Glatfelter Company are impermissible public trust uses and violate the Legislative Lakebed Grant, relevant portions of Chapter 30 including Wis. Stat. § 30.03 and the public trust doctrine as developed under Wisconsin law.

(2) Regardless of the foregoing, based on the historical development of the Grant Area, to which the DNR failed to object, and based on the DNR's enforcement discretion, the DNR agreed that it would not pursue enforcement action under its authority relating to the public trust laws and that it would not seek

equitable relief, including removal of existing facilities and activities, during the term of the Settlement Agreement.

(3) The City, Minergy Corporation and Glatfelter Company agreed that applicable regulatory permits under chapters 30, 144 and 147 would be obtained for any activities in the Grant Area and that any violations of the Settlement Agreement could be treated as violations of chapter 30 and enforced in accordance with the provisions of chapters 23, 30 and 227.

(4) The DNR concluded that the legislative grant is a lakebed grant; the City of Neenah, Minergy Corporation, and Glatfelter Company disagreed with the DNR's characterization of the legislative grant as a lakebed grant.

¶ 8. After executing the Settlement Agreement, the City and Minergy Corporation entered into a lease, running through May 2050, that authorized Minergy Corporation to construct and operate the proposed facility.

¶ 9. The City conducted public meetings relating to the proposed lease with Minergy Corporation and received both support for and opposition to the proposal. Plaintiff Dunwiddie objected to the Minergy facility and requested that the lease be voided.

¶ 10. Nevertheless, the Minergy facility was approved by the City Common Council, the City Plan Commission, the City Board of Appeals, the City Finance Committee, and the City Park and Recreation Committee.

¶ 11. In April 1996 the DNR issued the Final Air Pollution Control Construction Permit (air permit) for the Minergy facility and prepared an Environmental Analysis and Decision on the Need for an Environmental Impact Statement. The DNR also provided notice of

its approval of the air permit to several individuals who had requested copies of the final decision, including plaintiffs William Dunwiddie and John Gillen.

¶ 12. On or about May 8, 1996, a representative of plaintiff Friends of Our Neenah Parks applied to the City for a permit to hold a "Minergy Protest March" on May 18, 1996, over the Grant Area. As a part of that request, the representative of Friends of Our Neenah Parks asked for permission to use a boat ramp to launch a canoe. The request was denied by Glatfelter Company.

¶ 13. On May 21, 1996, the plaintiffs initiated suit in circuit court as individuals "and in the name of the State of Wisconsin." The complaint (as amended) challenges the legality of the Minergy lease and the actions of Glatfelter Company. More specifically, the complaint asserts the following seven theories or claims supporting the plaintiffs' ultimate conclusion that the defendants' actions are unlawful: (1) the Minergy lease is for a private purpose and violates the public trust doctrine established by Wis. Const. art. IX, § 1; (2) the Minergy and Glatfelter leases constitute state action depriving the plaintiffs of their interest in the use of the area in issue in violation of Wis. Const. art. XI, § 3a; the Fifth Amendment to the U.S. Constitution; and 42 U.S.C. § 1983; (3) the lease (the complaint does not specify which lease) deprives the plaintiffs of their interest in land held in trust by the state without due process of law in violation of the Fifth Amendment to the U.S. Constitution and 42 U.S.C. § 1983; (4) the Minergy lease constitutes a private nuisance; (5) the defendants' actions constitute a trespass; (6) the construction of the Minergy facility and Glatfelter Company's causing gravel to be dumped on Grant Area lands constitute public nuisances under

Wis. Stat. § 30.294 on the ground that no DNR permits were obtained, as required by Wis. Stat. § 30.12; and (7) the Minergy lease constitutes an alienation of the public interest and violates Wis. Const. art. XI, § 3.

¶ 14. The plaintiffs' prayer for relief requests that the circuit court declare that the Minergy lease is null and void; that the lease constitutes a private nuisance, a public nuisance and a trespass; and that the circuit court grant a permanent injunction against the construction of the Minergy facility.[4] The plaintiffs did not file a notice of claim against the City.

¶ 15. Glatfelter Company filed a motion to dismiss; the City and Minergy Corporation filed consolidated motions to dismiss and for summary judgment. The circuit court dismissed the plaintiffs' claims with prejudice, reasoning that the plaintiffs' proper remedy was to challenge the Settlement Agreement through the administrative review process established in chapter 227 of the statutes.

---

[4] A week before oral argument in this court, Minergy Corporation filed supplemental affidavits on the issue of mootness. Minergy Corporation argued that the appeal was moot because Minergy Corporation had already completed construction of the facility, had commenced startup of the facility, had operated the facility on natural gas and was scheduled to begin receiving paper sludge for processing on January 5, 1998, the day before oral argument in this court.

The plaintiffs responded that the appeal was not moot because Minergy Corporation made the business decision to proceed with construction of the facility in spite of the risks, including the DNR's position that construction on the Grant Area would be illegal.

At oral argument the plaintiffs conceded that their request for a grant of a permanent injunction against the construction of the Minergy facility is moot, but they persisted in their position that the Minergy lease violates the public trust doctrine.

¶ 16. After the circuit court's ruling on the motion to dismiss, Minergy Corporation proceeded with construction of the facility.[5]

¶ 17. This court accepted the case on certification from the court of appeals and heard oral argument on January 6, 1998. In a letter to the parties dated January 23, 1998, the court asked the parties to consider alternative dispute resolution. In a letter to the court dated March 3, 1998, the parties requested that the court proceed to a decision in the case.

## II

¶ 18. The first issue we must address is whether the plaintiffs' failure to file a notice of claim against the City bars the plaintiffs' action against the City. The City and Minergy Corporation argue that the plaintiffs' failure to comply with the notice of claim requirement set forth in Wis. Stat. § 893.80(1)(b) bars the plaintiffs' claims against the City.[6]

---

[5] The plaintiffs did not seek a stay in circuit court. All the parties agree that under the Wisconsin statutes the plaintiffs may have been required to provide substantial security in order to seek a stay. *See* Wis. Stat. §§ 806.08(3), 813.06. The plaintiffs argue that as individual citizens, they did not have the financial ability to post security against the construction of the multimillion dollar Minergy facility.

[6] The plaintiffs concede that no notice of claim was filed against the City. They argue that the City had actual notice of their claim because at a January 1996 public meeting, plaintiff William Dunwiddie objected to the Minergy facility and asked that the lease be voided. In attendance at that meeting were the City Mayor, City Attorney and two Minergy representatives.

Actual notice may satisfy the notice of injury provisions of Wis. Stat. § 893.80(1)(a), *Kellner v. Christian*, 197 Wis. 2d 183, 196, 539 N.W.2d 685 (1995), but does not satisfy the notice of claims provisions of § 893.80(1)(b). *See Futsch v. St. Croix Cen-*

¶ 19. Wisconsin Stat. § 893.80(1)(b) prohibits a claimant from bringing an action against a governmental body or its officers or employees for acts done in their official capacity unless a notice of claim is first presented and the claim is disallowed.[7] *See City of Racine v. Waste Facility Siting Board*, 217 Wis. 2d 616, 575 N.W.2d 712, 714 (1998).

¶ 20. This court has held that Wis. Stat. § 893.80(1)(b) "applies to all causes of action, not just those in tort and not just those for money damages." *DNR v. City of Waukesha*, 184 Wis. 2d 178, 191, 515 N.W.2d 888 (1994); *City of Racine*, 575 N.W.2d at 714.

¶ 21. The United States Supreme Court has refused to permit application of the Wisconsin notice of claims statute to a 42 U.S.C. § 1983 action brought in Wisconsin state courts, reasoning that the notice of claims statute interferes with federal civil rights policy. *See Felder v. Casey*, 487 U.S. 131 (1988). The *Felder* Court stated that "enforcement of the notice-of-claim statute in § 1983 actions brought in state court so interferes with and frustrates the substantive right Congress created that, under the Supremacy Clause, it

---

*tral School District*, 183 Wis. 2d 336, 343, 515 N.W.2d 328 (Ct. App. 1994).

[7] Wisconsin Stat. § 893.80(1)(b) provides:

> [N]o action may be brought or maintained against any. . .governmental subdivision. . .unless. . .[a] claim containing the address of the claimant and an itemized statement of the relief sought is presented to the appropriate clerk or person who performs the duties of a clerk or secretary for the defendant. . .subdivision. . .and the claim is disallowed.

must yield to the federal interest." *Id.* at 151. The *Felder* Court concluded as follows:

> [Wisconsin] may not alter the outcome of federal claims it chooses to entertain in its courts by demanding compliance with outcome-determinative rules that are inapplicable when such claims are brought in federal court. . . . [A] state court may not decline to hear an otherwise properly presented federal claim because that claim would be barred under a state law requiring timely filing of notice. State courts simply are not free to vindicate the substantive interests underlying a state rule of decision at the expense of the federal right.

*Id.* at 152.

¶ 22. Under the *Felder* case, the plaintiffs' § 1983 claims are not barred by the plaintiffs' failure to comply with Wis. Stat. § 893.80(1)(b). The question then becomes whether the plaintiffs' claims, other than the § 1983 claims, are barred by the failure to file a notice of claim.

██

¶ 23. An examination of the complaint (as amended) reveals that the § 1983 claims and the state claims are closely related.[8] The plaintiffs' § 1983 claims are based on the same factual allegations giving

---

[8] The complaint alleges two different claims under both 42 U.S.C. § 1983 and the Fifth Amendment to the U.S. Const. First, the complaint alleges that the City's execution of the lease with Minergy Corporation constitutes a state action depriving the plaintiffs of their interest in the use of the area held in trust by the state for the public's benefit, in violation of Wis. Const. art. XI, § 3a; the Fifth Amendment to the U.S. Constitution; and 42 U.S.C. § 1983. This claim states that the City violated the plaintiffs' property rights under the takings clause of the Fifth Amendment.

rise to the state claims, and the § 1983 claims are premised on violations of the state public trust doctrine. Therefore, the crux of this case is the state public trust doctrine, which recognizes that the state holds beds of navigable waters in trust for all Wisconsin citizens. *See Muench v. Public Serv. Comm'n*, 261 Wis. 492, 501, 53 N.W.2d 514 (1952). The origins of the public trust doctrine date back at least to the Northwest Ordinance of 1787 and Wis. Const. art. IX, § 1.[9]

■

¶ 24. Although the public trust doctrine was originally designed to protect commercial navigation, the doctrine has been expanded to safeguard the public's use of navigable waters for enjoyment of natural scenic beauty, as well as for recreational and nonpecuniary purposes. *See State v. Trudeau*, 139 Wis. 2d 91, 104, 408 N.W.2d 337 (1987); *Muench*, 261 Wis. at 492. The legislature has the primary authority to administer the

---

Second, the complaint alleges that the City's lease with Minergy Corporation deprives the plaintiffs of their interest in land held in trust by the state for the benefit of the State's citizens without due process of law, in violation of the Fifth Amendment and § 1983. This claim states that the City violated the plaintiffs' procedural due process rights.

[9] Wisconsin Const. art. IX, § 1 provides:

**Jurisdiction on rivers and lakes; navigable waters.** The state shall have concurrent jurisdiction on all rivers and lakes bordering on this state so far as such rivers or lakes shall form a common boundary to the state and any other state or territory now or hereafter to be formed, and bounded by the same; and the river Mississippi and the navigable waters leading into the Mississippi and St. Lawrence, and the carrying places between the same, shall be common highways and forever free, as well as to the inhabitants of the state as to the citizens of the United States, without any tax, impost or duty therefor.

public trust and has the power of regulation to effectuate the purposes of the public trust.[10]

¶ 25. The public trust doctrine allows a person to sue on behalf of, and in the name of, the State "for the purpose of vindicating the public trust." *State v. Deetz*, 66 Wis. 2d 1, 13, 224 N.W.2d 407 (1974). It is through the public trust doctrine that the plaintiffs bring their suit under Wis. Stat. § 30.294.

¶ 26. Wisconsin Stat. § 30.294 provides that: "Every violation of this chapter is declared to be a public nuisance and may be prohibited by injunction and may be abated by legal action brought by any person." The plaintiffs requested the equitable remedy of a permanent injunction in their complaint in this case. While they are no longer seeking that remedy—one specifically allowed by Wis. Stat. § 30.294—the fact that enforcement of the public trust doctrine can be achieved by injunction is significant to our determination of the applicability of Wis. Stat. § 893.80(1)(b).

¶ 27. Injunctive relief is usually requested simultaneously with, or soon after, commencing an action by a motion for a temporary restraining order and/or a preliminary injunction. A permanent injunction "is designed to prevent injury. . .and. . .may issue merely upon proof of a sufficient threat of future irreparable injury." *Pure Milk Prod. Coop. v. National Farmers Org.*, 90 Wis. 2d 781, 802, 280 N.W.2d 691 (1979). Because the goal in the issuance of a permanent injunc-

---

[10] For other cases discussing the public trust doctrine, *see, e.g.*, *State v. Bleck*, 114 Wis. 2d 454, 465, 338 N.W.2d 492 (1983); *Ashwaubenon v. Public Serv. Comm'n*, 22 Wis. 2d 38, 48–49, 125 N.W.2d 647 (1963).

tion is to prevent injury, "it is not necessary for the plaintiff to wait until some injury has been done." *Id.*

■

¶ 28. It is with the nature of the public trust doctrine and the preventative goals of injunctive relief in mind that we consider the application of Wis. Stat. § 893.80(1)(b) to the claim under Wis. Stat. § 30.294 in this case. As stated, § 893.80(1)(b) prevents a plaintiff from bringing a cause of action against a governmental body unless the plaintiff provides to the governmental body a notice of claim. The purpose of § 893.80(1)(b) is "to provide the governmental subdivision an opportunity to compromise and settle a claim without costly and time-consuming litigation." *City of Racine*, 575 N.W.2d at 714.

¶ 29. Wisconsin Stat. § 30.294 expressly allows a plaintiff to seek immediate injunctive relief to prevent injury. The enforcement procedures provided in § 30.294, are inconsistent with Wis. Stat. § 893.80(1)(b), which requires a plaintiff to provide a governmental body with a notice of claim, and to wait 120 days or until the claim is disallowed before filing an action. Therefore, the general application of § 893.80(1)(b) in this case frustrates the plaintiffs' specific right to injunctive relief under § 30.294.

■

¶ 30. Where general and specific statutory provisions are in conflict, the specific provisions take precedence. *See State ex rel. Auchinleck v. Town of LaGrange*, 200 Wis. 2d 585, 596, 547 N.W.2d 587 (1996). Therefore, the specific procedures set forth in Wis. Stat. § 30.294 "take precedence over the general notice provisions of § 893.80." *Id.* Thus, the plaintiffs' failure to comply with Wis. Stat. § 893.80(1)(b) in this

case does not bar their state claims brought in accord with § 30.294.

¶ 31. Our analysis of the application of Wis. Stat. § 893.80(1)(b) in this case is consistent with this court's decision in *Auchinleck*, 200 Wis. 2d 585. In *Auchinleck*, we created an exception to the application of § 893.80(1)(b) in regard to open meetings and open records laws because of the specific enforcement provisions of the statutes involved. *See id.* at 596. Under the open records law at issue in *Auchinleck*, a requester may immediately bring a mandamus action seeking release of records if a municipality withholds or delays access to a record. *See* Wis. Stat. § 19.37. In addition, under the open meetings law, a complainant had to first file a complaint with the district attorney. *See* Wis. Stat. § 19.97(1). If the district attorney failed to bring an enforcement action within 20 days, the complainant could immediately file suit against the municipality, seeking declaratory or other appropriate relief. *See* Wis. Stat. § 19.97(4). Notwithstanding these provisions of the open records and opening meetings laws, however, the municipality in *Auchinleck* argued that the notice of claim provisions of Wis. Stat. § 893.80(1)(b) required that a complainant wait 120 days after filing a notice of claim, or until the municipality disallowed the claim, to file suit against the municipality.

¶ 32. Faced with these somewhat inconsistent statutory provisions, we had to ascertain the legislature's intent in enacting Wis. Stat. § 893.80(1)(b). *See Auchinleck*, 200 Wis. 2d at 594. Having determined that the legislative intent of the open records and open meetings laws conflicted with the intent of § 893.80(1)(b), we followed the cardinal rule of statutory interpretation that a specific statute takes precedence over a general statute. *See id.* at 595–96. In

*Auchinleck*, therefore, we held that the specific enforcement procedures of the open meetings and open records laws took precedence over the general notice requirements of § 893.80(1). *See id.* at 595–96.

¶ 33. The concurring opinion states that this court's position regarding the application of Wis. Stat. § 893.80(1)(b) is "unpredictable." Concurring op. at 848. As part of its argument, the concurrence asserts that this court has not previously decided "whether noncompliance with the notice of claim statute would deprive the court of the power to proceed." *Id.* at 846. Citing Wis. Stat. § 893.82 as an analogy, the concurrence suggests that failure to give notice in accord with § 893.80(1)(b) may be jurisdictional and, therefore, "may not be waived by the defendant's failure to plead noncompliance as an affirmative defense." *Id.* at 847. We disagree.

██

¶ 34. The concurring opinion correctly states that in *Figgs v. City of Milwaukee*, 121 Wis. 2d 44, 357 N.W.2d 548 (1984), this court concluded that the notice of claim filed pursuant to § 893.80(1)(b) in that case was sufficient. However, this court did recognize that the court of appeals in *Figgs* had determined that the notice of claim was defective. Accordingly, this court found it necessary to determine whether noncompliance with § 893.80(1)(b) is an issue that may be waived by a defendant, or whether compliance with § 893.80(1)(b) involves an issue of the court's jurisdiction or power to proceed which may not be waived. *See id.* at 50–51.

> [W]e point out that this court has stated that these statutory conditions or conditions precedent [in Wis. Stat. § 893.80(1)(b)] have nothing to do with

subject matter jurisdiction of a circuit court. *Lees v. ILHR Department*, 49 Wis. 2d 491, 497, 182 N.W.2d 245 (1971); [NPC1]*Galloway v. State*, 32 Wis. 2d 414, 419, 145 N.W.2d 761, 147 N.W.2d 542 (1966). They deal only with the appropriate conditions set by the legislature as a prerequisite for commencing or maintaining an action. Subject matter jurisdiction is conferred on the circuit courts by the constitution. *In the Matter of the Guardianship of Ebarhardy*, 102 Wis. 2d 539, 550, 307 N.W.2d 881 (1981). Whether or not a proper claim has been filed, the circuit court has jurisdiction of the subject matter.

*Id.* at 51–52 n.6.[11]

¶ 35. The concurring opinion also argues that our reliance on the immediate enforcement remedy of injunctive relief in Wis. Stat. § 30.294 is misplaced because the injunction in this case was not filed against the City, the injunction sought in the complaint was a permanent rather than a preliminary injunction, and the plaintiffs waited approximately 165 days from the date the City of Neenah and Mineargy entered into the lease before filing their claim. None of these asserted distinctions alter our analysis.

---

[11] The concurrence would likely argue that because the jurisdictional issue was not dispositive in this court's decision in *Figgs v. City of Milwaukee*, 121 Wis. 2d 44, 357 N.W.2d 548 (1984), this statement is dicta. However, this court has previously stated that "when a court of last resort intentionally takes up, discusses, and decides a question germane to, though not necessarily decisive of, the controversy, such decision is not a *dictum* but is a judicial act of the court which it will thereafter recognize as a binding decision." *Chase v. American Cartage Co.*, 176 Wis. 235, 238, 186 N.W. 598 (1922). *See also State v. Taylor*, 205 Wis. 2d 664, 670, 556 N.W.2d 779 (Ct. App. 1996).

¶ 36. We conclude that there is an exception to Wis. Stat. § 893.80(1)(b) where the plaintiffs' claims are brought pursuant to the public trust doctrine under Wis. Stat. § 30.294, which provides injunctive relief as a specific enforcement remedy. It is irrelevant that the requested injunction in this case was not against the City of Neenah. Against whom the injunctive relief is sought is not a significant factor. Rather, our conclusion rests upon the fact that the plaintiffs brought this action in the name of the State to stop a violation of the public trust doctrine, and that injunctive relief is a specific enforcement remedy available under § 30.294.

¶ 37. Similarly, it is irrelevant that the plaintiffs here did not request a preliminary injunction. Wisconsin Stat. § 30.294 provides for enforcement through an injunction. The statutory language is not limited to enforcement only through a permanent injunction, and a request for a permanent injunction in a complaint may often be accompanied by a request for a preliminary injunction.

¶ 38. Finally, the record in this case shows that the reason the plaintiffs did not immediately file an action against the City of Neenah and Minergy is because they attempted to resolve the issue through other means. The City of Neenah and Minergy entered into the lease on December 6, 1995. Soon after, the plaintiffs requested a public meeting to voice objection to the lease, and a public meeting was held on January 23, 1996. *See* Record on appeal 16:2. Additional public meetings were held, and the City received further written and oral commentary opposing the lease. It was not until April 22, 1996, that the DNR made its decision that an Environmental Impact Statement was not required. *See id.* at 16:110. On April 30, 1996, the DNR issued the Final Air Pollution Control Construction

Permit for Minergy to construct and operate the glass aggregate plant. *See id.* at 16:3. Less than one month later, on May 22, 1996, the plaintiffs filed their Summons and Complaint in this case. Thus, the concurring opinion's conclusion that "the plaintiffs clearly had sufficient time to comply with the notice of claim statute" is unfounded. *See* concurring op. at 839.

■■

¶ 39. Based upon the nature of the plaintiffs' claims brought in the name of the State to vindicate the public trust; the fact that the plaintiffs' complaint could under Wis. Stat. § 30.294 and, in fact, did request injunctive relief; and the language of Wis. Stat. § 893.80(1)(b), we conclude that the unique circumstances of this case provide an exception to the notice of claim requirements.[12] As such, the plaintiffs failure to comply with § 893.80(1)(b) in this case does not bar their claims brought in accord with § 30.294.

---

[12] We do not understand the concurring opinion's conclusion to the effect that our holding is premised upon "no governing rule or principle." Concurring op. at 836. As set forth in the above discussion, our decision concluding that there is a narrow exception to Wis. Stat. § 893.80(1)(b), for claims filed under Wis. Stat. § 30.294, is premised upon the unique nature of a claim brought to enforce the public trust doctrine in the name of the State, combined with the fact that § 30.294 provides injunctive relief as a specific enforcement remedy. Even if this court may find it necessary to recognize other exceptions to the requirements of § 893.80(1)(b) in the future, we should not undertake a re-write of the statute as the concurring opinion suggests. *See* concurring op. at 841. We decline the invitation to take on a policy-making function more appropriately left to the legislature. *See Gaertner v. Holcka*, 219 Wis. 2d 436, 580 N.W.2d 271 (1998).

¶ 40. We next determine whether the public trust doctrine enables a citizen to directly sue a private party whom the citizen believes was inadequately regulated by the DNR. This question is a question of law that this court decides independently of the circuit court, benefiting from its analysis. *See Northbridge Co. v. W.R. Grace & Co.*, 162 Wis. 2d 918, 923, 471 N.W.2d 179 (1991).

¶ 41. On appellate review of a motion to dismiss the complaint, we treat as true the facts presented in the complaint (as amended) and the stipulation of facts, as well as all reasonable inferences that may be drawn from the facts.[13] We construe all facts and inferences in favor of the plaintiffs. *See id.* at 923–24.

¶ 42. As stated, the public trust doctrine "establishes standing for the state, or any person suing in the name of the state for the purpose of vindicating the public trust, to assert a cause of action recognized by the existing law of Wisconsin." *Deetz*, 66 Wis. 2d at 13. Therefore, we look to the statutes enacted pursuant to the public trust doctrine to determine whether the plaintiffs may bring this suit.

¶ 43. Wisconsin Stats. ch. 30, enacted pursuant to the public trust doctrine, governs navigable waters and navigation in Wisconsin. The plaintiffs assert that Wis. Stat. § 30.294 gives them standing to bring an action against the defendants. Section 30.294 provides

---

[13] The parties agree that the circuit court treated the case as a motion to dismiss based on the complaint (as amended) and the stipulation of facts, not as a motion for summary judgment.

that "every violation of this chapter [30] is declared to be a public nuisance and may be prohibited by injunction and may be abated by legal action brought by *any person*" (emphasis added). Thus § 30.294 expressly contemplates citizen suits irrespective of the DNR'S actions or enforcement decisions.

¶ 44. The plaintiffs allege that the defendants have violated Wis. Stat. § 30.12, which is "a codification of the common law restriction against encroachments on publicly held lakebeds." *Trudeau*, 139 Wis. 2d at 102 (citing *Hixon v. Public Serv. Comm'n*, 32 Wis. 2d 608, 616, 146 N.W.2d 577 (1966)).[14] In § 30.12 the legislature declared that it is unlawful to place any structure on a bed of a navigable water unless a permit has been granted by the DNR or the structure is authorized by statute.[15] The plaintiffs allege that Minergy Corporation did not obtain the permits from the DNR.

¶ 45. The City and Minergy Corporation raise two defenses to the plaintiffs' public nuisance claim under Wis. Stat. §§ 30.12 and 30.294. First, the City and Minergy Corporation argue that the DNR's deci-

---

[14] *See also Bleck*, 114 Wis. 2d at 467; *Sterlingworth Condominium Ass'n v. DNR*, 205 Wis. 2d 710, 723, 556 N.W.2d 791 (Ct. App. 1996); *Cassidy v. DNR*, 132 Wis. 2d 153, 158, 390 N.W.2d 81 (Ct. App. 1986).

[15] Wisconsin Stat. § 30.12(1) states:

(1) GENERAL PROHIBITION. Except as provided under sub. (4), unless a permit has been granted by the department pursuant to statute or the legislature has otherwise authorized structures or deposits in navigable waters, it is unlawful:

(a) To deposit any material or to place any structure upon the bed of any navigable water where no bulkhead line has been established; or

(b) To deposit any material or to place any structure upon the bed of any navigable water beyond a lawfully established bulkhead line.

sion to forego public trust claims in accordance with Wis. Stat. § 30.03(4)(a) defeats the plaintiffs' public nuisance claim under § 30.294. Second, the City and Minergy Corporation argue that § 30.12(1), the provision the plaintiffs claim was violated, does not apply in this case because the Grant Area is not a bed of navigable water.[16]

¶ 46. The City and Minergy Corporation first argue that the legislature has delegated to the DNR the exclusive authority to decide when a public trust violation has occurred and that after the DNR decides to allow a project to proceed, as it did in this case, all persons are barred from challenging the disputed project under Wis. Stat. § 30.294.

¶ 47. Wisconsin Stat. § 30.03(4)(a) sets forth the procedures for the DNR to follow when it learns of a possible violation of the statutes relating to navigable waters or a possible infringement of the public rights relating to navigable waters.[17] According to the City and Minergy Corporation, the DNR, by entering into the Settlement Agreement with the defendants, decided to forego the public trust claims. Therefore, the City and Minergy Corporation argue, whatever right the plaintiffs may have had to challenge the Minergy facility was forfeited when the DNR entered into the Settlement Agreement. The City and Minergy Corpo-

[16] Glatfelter Company joins the City and Minergy Corporation in this defense.

[17] Wisconsin Stat. § 30.03(4)(a) provides in pertinent part:

If the department learns of a possible violation of the statutes relating to navigable waters, and the department determines that the public interest may not be adequately served by imposition of a penalty or forfeiture, the department may proceed as provided in this paragraph, either in lieu of or in addition to any other relief provided by law. The department may order a hearing under ch. 227 concerning the possible violation or infringement...

ration assert that the plaintiffs do not have standing to bring a public nuisance claim under Wis. Stat. § 30.294; their only recourse is to challenge the DNR's actions under the administrative review process established in Wis. Stat. ch. 227.

¶ 48. The City and Minergy Corporation are, in essence, asking this court to amend Wis. Stat. § 30.294 by grafting onto the statute an exception. The statute then would read as follows: "Every violation of this chapter. . .may be abated by legal action brought by any person *except where the DNR has decided not to seek enforcement action itself for the violation*" (underscored portion reflects the language grafted onto the statute by the City and Minergy Corporation).

¶ 49. We agree with the amicus brief of the Wisconsin Department of Justice that the position advanced by the City and Minergy Corporation has no basis in statutory language or legislative history.

¶ 50. The text of Wis. Stat. § 30.294 expressly states that a violation of Wis. Stat. ch. 30 "may be abated by legal action brought by any person." We can discern nothing in chapter 30 to allow us to read an exception into § 30.294 that would disallow the plaintiffs' suit in this case.

¶ 51. In addition, the legislative history of Wis. Stat. § 30.294 contravenes the argument advanced by the City and Minergy Corporation that the creation of the DNR implicitly limits the application of § 30.294 in this case. The legislature authorized citizens to bring actions to abate unauthorized structures in public waters both before and after the creation of the DNR in 1967.[18]

---

[18] The DNR was created in 1967. Section 3, ch. 327, Laws of 1967.

¶ 52. As far back as 1917, the legislature provided that public nuisances may be enjoined and abated by citizen suits. *See* § 25, ch. 474, Laws of 1917. A more recent precursor to Wis. Stat. § 30.294 provided that "every obstruction constructed or maintained in or over any navigable waters of this state in violation of this chapter is declared to be a public nuisance, and the construction thereof may be enjoined and the maintenance thereof may be abated by action at *the suit of the state or any citizen thereof*" (emphasis added). Section 30.15(4), ch. 441, Laws of 1959. The 1959 legislature thus expressly recognized the citizen's right to enjoin and abate public nuisances as separate and independent from the state's right to enjoin and abate public nuisances. The legislature enacted the present form of § 30.294 in 1987, 1987 Wis. Act. 374, § 78, 20 years after the creation of the DNR.

¶ 53. Neither the text nor the legislative history of Wis. Stat. § 30.294 indicates that a citizen's right to abate public nuisances is contingent on the DNR's actions or enforcement decisions or is circumscribed by the procedures set out in Wis. Stat. § 30.03(4)(a). Thus we conclude that the DNR's decision stated in the Settlement Agreement to forego enforcement of the public trust claims does not defeat the plaintiffs' public nuisance claim under Wis. Stat. ch. 30.

¶ 54. The second defense raised by the defendants to the plaintiffs' Wis. Stat. ch. 30 public nuisance claim is that Wis. Stat. § 30.12(1) does not apply to the Minergy facility or the actions of the Glatfelter Company because the area in issue was never lakebed and the waters were not navigable.

¶ 55. The brief of the City and Minergy Corporation points out that the issue of the navigability of the water in the area involved in this case and the effects of

accretions or passage of time on public trust characteristics of the area are in dispute in this case and must be adjudicated. *See also* Settlement Agreement discussed at pp. 814–15 above. The brief of the City and Minergy Corporation comments on the dispute as follows:

> Although [the plaintiffs'] lawsuit presupposes that the area in question was once "lakebed," this has not been adjudicated and is not free from dispute. It remains to be shown whether and to what extent the area (which was never covered by more than a few inches of water even at the time of filling) was navigable at the time of the Northwest Ordinance, before the Fox River was dammed. Even if it was, it remains to be determined whether the accretions/or passage of time destroyed its purported "public trust" characteristics. And, despite the name, there is a legitimate argument that Little Lake Butte des Morts is a river (in which case the riparian rights of landowners may be materially greater).

Brief for the City and Minergy Corporation at 3 n.1.

¶ 56. This defense raises, as the defendants concede, an issue that must be adjudicated. It cannot be determined on a motion to dismiss or a motion for summary judgment. The complaint asserts that the Grant Area involves a bed of navigable water and that portions of Little Lake Butte des Morts are navigable waters. We accept these assertions as true for purposes of determining whether the plaintiffs' complaint (as amended) allows them to directly sue the defendants under Wis. Stat. § 30.294.

¶ 57. For the reasons we have set forth previously, we hold that the plaintiffs may bring suit under Wis. Stat. § 30.294 against the defendants to abate a public nuisance.

¶ 58. The plaintiffs' numerous claims appear to be interconnected and involve, in one form or another, the plaintiffs' assertion that the Minergy lease and Glatfelter Company's conduct are violations of the public trust doctrine. Without a developed factual record in this case, we do not address further the plaintiffs' various claims for relief. We reverse the judgment of the circuit court and remand the cause to the circuit court for proceedings consistent with this opinion.

*By the Court.*—The judgment of the circuit court is reversed, and the cause is remanded.

¶ 59. SHIRLEY S. ABRAHAMSON, CHIEF JUSTICE *(concurring)*. Although I agree that the plaintiffs' failure to file a notice of claim with the City of Neenah pursuant to Wis. Stat. § 893.80(1)(b) (1993–94)[1] does not bar the plaintiffs' action against the City, I cannot join Part II of the per curiam opinion for several reasons.

¶ 60. First and fundamentally, the holding of the per curiam opinion is not applicable to the facts of this case. The per curiam opinion holds that because the plaintiffs' complaint sought injunctive relief under Wis. Stat. § 30.294, no notice of claim need be filed with the City. In this case, however, the plaintiffs did not seek injunctive relief against the City; they sought a permanent injunction only against Minergy Corporation, a private corporation. Therefore, the holding of the per curiam opinion does not apply to this case.

¶ 61. Although claiming to adhere to *DNR v. City of Waukesha*, 184 Wis. 2d 178, 515 N.W.2d 888 (1994), the per curiam opinion essentially overrules the *Wau-*

---

[1] All references to the Wisconsin statutes are to the 1993–94 version unless otherwise indicated.

*kesha* case by holding that Wis. Stat. § 893.80(1)(b) does not apply to claims for permanent injunctive relief brought under Wis. Stat. § 30.294. The bench and bar would be better served if the per curiam opinion would acknowledge forthrightly the effect of its holding, namely making § 893.80(1)(b) inapplicable to claims for injunctive relief against governmental bodies.

¶ 62. Second, if the *Waukesha* case is not overruled, I would hold that the plaintiffs' failure to file a notice of claim does not require dismissal of the plaintiffs' action against the City. The plaintiffs have asserted 42 U.S.C. § 1983 claims for relief against the City. Wisconsin Stat. § 893.80(1)(b) is not applicable to the § 1983 claims. *See Felder v. Casey*, 487 U.S. 131 (1988).

¶ 63. Third, I can discern no governing rule or principle in the court's creation of various exceptions to the notice of claim requirement. I believe our decisions regarding Wis. Stat. § 893.80(1)(b) leave attorneys and circuit courts uncertain about when a notice of claim must be filed, calling into question the status of cases that are pending in or already decided by the courts.

I

¶ 64. The per curiam opinion holds that because the plaintiffs sought an injunction under Wis. Stat. § 30.294 against Minergy Corporation, they need not file a notice of claim with the City.[2] The underlying rationale for this holding is that a request for an injunction under § 30.294 requires immediate court action and there is not enough time to file a notice of

---

[2] The per curiam opinion reasons that "the fact that enforcement of the public trust doctrine can be achieved by injunction is significant to our determination of the applicability of Wis. Stat. § 893.80(1)(b)." Per curiam op. at 822.

claim and wait the prescribed 120 days for the City to disallow the claim. *See* per curiam op. at 823.

¶ 65. The holding of the per curiam opinion is not applicable to the facts of this case. The plaintiffs in this case did not seek an injunction against the City. They sought an injunction against another defendant to the action, Minergy Corporation, to halt Minergy Corporation's construction of a glass aggregate plant. The fact that the plaintiffs sought injunctive relief against a defendant other than the City does not excuse the plaintiffs from filing a notice of claim with the City.

¶ 66. In addition, the rationale of the per curiam opinion does not fit the facts of this case and directly contradicts the *Waukesha* case. The per curiam opinion reasons that because Wis. Stat. § 30.294 expressly allows the plaintiffs to seek "immediate" injunctive relief to prevent injury, the general statute, Wis. Stat. § 893.80(1)(b), frustrates the plaintiffs' specific right to "immediate" injunctive relief under § 30.294. Per curiam op. at 823.

¶ 67. The per curiam opinion relies on *State ex rel. Auchinleck v. Town of LaGrange*, 200 Wis. 2d 585, 547 N.W.2d 587 (1996), which held that Wis. Stat. § 893.80(1)(b) does not apply to the open records law. The open records law requires that the record custodian fill or deny a request for a record "as soon as practicable and without delay." Wis. Stat. § 19.35(4). As *Auchinleck* and the per curiam opinion make clear, time is of the essence in the open records law, which sets forth a detailed procedure to govern both the requester in obtaining a record and the custodian of the record in granting or denying the request. The focus of the open records law is to facilitate speedy access to records.

¶ 68. Unlike the open records law, Wis. Stat. § 30.294 does not set forth a procedure for injunctive relief or a specific enforcement mechanism. Section 30.294 merely provides that violations of chapter 30 "may be prohibited by injunction and may be abated by legal action." Although the per curiam opinion asserts that § 30.294 provides a specific enforcement mechanism, the statute in fact does not. Injunctions brought under § 30.294, like injunctions generally, are governed by ch. 813, which sets forth mechanisms for injunctive relief.

¶ 69. Even if Wis. Stat. § 30.294 were silent about injunctive relief, a claimant could still seek an injunction to abate a public nuisance. A statute need not specify that injunctive relief is available for a claimant to seek an injunction. *See State v. Seigel,* 163 Wis. 2d 871, 892, 472 N.W.2d 584 (Ct. App. 1991). "Wisconsin courts may enjoin public nuisances pursuant to their vested equitable powers." *Seigel,* 163 Wis. 2d at 892–93; *see also State v. Weller,* 109 Wis. 2d 665, 675, 327 N.W.2d 172 (Ct. App. 1983). Thus contrary to the per curiam opinion's assertion, § 30.294 provides no specific enforcement mechanism.

¶ 70. Furthermore, the per curiam opinion repeatedly equates injunctive relief with immediacy. According to the per curiam opinion, in all actions seeking an injunction under Wis. Stat. § 30.294, time is of the essence, and an injunction therefore is inconsistent with the notice of claim and the 120-day waiting period contained in Wis. Stat. § 893.80(1)(b). *See* per curiam op. at 823.

¶ 71. The per curiam opinion obfuscates the differences between a preliminary injunction and a permanent injunction. A preliminary injunction is a pretrial remedy that is granted to preserve the status

quo and to prevent harm while an action is pending. A permanent injunction is granted upon a final decision in the case, which may come many months or years after an action is brought.

¶ 72. *Waukesha* made clear that unless preliminary injunctive relief is requested, a notice of claim must be filed with the defendant city. The *Waukesha* court held that Wis. Stat. § 893.80(1)(b) applies to an action against a city for injunctive relief. The *Waukesha* court reasoned that because no preliminary injunctive relief was requested in that case, the claimant had sufficient time to comply with Wis. Stat. § 893.80(1)(b). *See Waukesha*, 184 Wis. 2d at 193 n.10.

¶ 73. In this case the plaintiffs did not seek a preliminary injunction. Moreover, the plaintiffs waited nearly six months (about 165 days) after the lease was signed by the City and Minergy Corporation before bringing an action against the City and the other defendants.[3] The lease authorized Minergy Corporation to construct and operate a glass aggregate plant. The plaintiffs thus were on notice that construction of the proposed Minergy facility had been authorized by the City. The plaintiffs had plenty of time to seek a preliminary injunction. Having waited nearly six months to bring their action, the plaintiffs clearly had sufficient time to comply with the notice of claim statute. If the per curiam opinion were adhering to *Waukesha* as it purports to do, it would have to conclude that the plaintiffs in this case had adequate time to file a notice of claim and to wait 120 days for the City to disallow the claim.

---

[3] The City of Neenah and Minergy Corporation entered into the lease on December 6, 1995. The plaintiffs did not file their action until May 22, 1996.

¶ 74. According to the per curiam opinion, the plaintiffs who sought an injunction in this case against a private corporation for allegedly violating navigable waters law need not have filed a notice of claim with the City. By contrast, the claimant in *Waukesha* (the state Department of Natural Resources) that sought an injunction against the city of Waukesha for allegedly violating drinking water standards was required to file a notice of claim. The per curiam opinion provides no basis for this distinction.

¶ 75. Two additional problems are raised in the per curiam opinion. The per curiam opinion errs in its rationale that "the specific procedures set forth in Wis. Stat. § 30.294 'take precedence over the general notice provisions of § 893.80.' " Per curiam op. at 823–24. The per curiam opinion misapplies this rule of statutory construction. The rule that the specific statute controls applies only where both statutes relate to the same subject matter. *See Schlosser v. Allis-Chalmers Corp.*, 65 Wis. 2d 153, 161, 222 N.W.2d 156 (1974); *Frostman v. State Farm Mut. Ins. Co.*, 171 Wis. 2d 138, 144, 491 N.W.2d 100 (Ct. App. 1992). The per curiam opinion does not explain why these two statutes relate to the same subject matter or why § 30.294 is the more specific statute. Furthermore, Wis. Stat. § 893.80 has been interpreted as directing that when a claim against a governmental body is based on another statute, the notice provisions of § 893.80(1) nevertheless apply. *See Waukesha*, 184 Wis. 2d at 192–93.[4]

---

[4] The *Waukesha* court concluded that Wis. Stat. § 893.80(5) "only directs that when a claim is based on another statute, the *damage limitations* of sec. 893.80(3) do not apply. Section 893.80(5) does not say that the notice provisions of sec. 893.80 (1) do not apply." *Waukesha*, 184 Wis. 2d at 192–93.

¶ 76. Finally, the per curiam opinion errs in relying on the fact that the plaintiffs' suit was brought in the name of the State. The plaintiffs in this case alleged in their complaint that they were bringing suit as individuals and in the name of the State. The plaintiffs' right to sue under Wis. Stat. § 30.294 is not contingent on their bringing suit in the name of the State. Section 30.294 expressly states, "Every violation of this chapter. . .may be abated by legal action brought by any person." Section 30.294 makes no reference to the State and in no way limits suits to those brought by individuals in the name of the State.

¶ 77. In addition, the per curiam opinion's reasoning defies this court's precedent. The *Waukesha* court held that the Department of Natural Resources, the state regulatory agency entrusted with enforcing state environmental laws, was not exempt from the provisions of Wis. Stat. § 893.80(1)(b). The *Waukesha* court explained, "Our holding today, that the state must comply with sec. 893.80(1), applies to all actions that are covered by the statute—not just DNR enforcement proceedings." *Waukesha*, 184 Wis. 2d at 196. Under the per curiam opinion's reasoning the State is not exempt from complying with § 893.80(1)(b) but citizens suing in the name of the State are.

¶ 78. In short, the holding and rationale of the per curiam opinion do not apply to the facts of this case, and directly contradict *Waukesha*. The plaintiffs brought an injunction against Minergy Corporation,

Wisconsin Stat. § 893.80(5) provides in pertinent part: "When rights or remedies are provided by any other statute against any political corporation, governmental subdivision or agency or any officer, official, agent or employe thereof for injury, damage or death, such statute shall apply and the limitations in sub. (3) shall be inapplicable."

not the City. The plaintiffs sought a permanent injunction, not a preliminary injunction, and thus had adequate time to file a notice of claim. Therefore, the plaintiffs were required under *Waukesha* to comply with Wis. Stat. § 893.80(1)(b).

¶ 79. The per curiam opinion carves out an exception to Wis. Stat. § 893.80(1)(b) that is not supported by either the facts or the law. The per curiam opinion asserts that the exception is confined to "the unique circumstances of this case." Per curiam op. at 828. The circumstances of seeking an injunction under Wis. Stat. § 30.294, however, are not unique. Several statutes, as well as the common law, expressly recognize the right of a person to seek an injunction, including one to abate a public nuisance.[5]

¶ 80. The per curiam opinion opens the door for many claimants to argue for an exemption from the provisions of Wis. Stat. § 893.80(1)(b). Under the per curiam opinion, a claimant need only insert a request for injunctive relief in a complaint to be exempt from the notice of claim provision. According to the per curiam opinion, a claimant need not even pursue or win on the request for injunctive relief.

¶ 81. The per curiam opinion's holding in effect overrules *Waukesha*, significantly undercuts *City of Racine v. Waste Facility Siting Bd.*, 216 Wis. 2d 616, 575 N.W.2d 712 (1998),[6] and returns the case law to pre-*Waukesha* decisions that required a notice of claim in suits for money damages, but not for injunctive relief.

---

[5] *See, e.g.*, Wis. Stat. §§ 823.01; 157.70(8)(a); and 66.032(7)(b); *see also* Wis. Stat. ch. 813 (governing injunctions generally).

[6] The court in *City of Racine v. Waste Facility Siting Bd.*, 216 Wis. 2d 616, 622, 575 N.W.2d 712 (1998), relied heavily on *Waukesha*.

¶ 82. If the per curiam opinion forthrightly held that Wis. Stat. § 893.80(1)(b) does not apply to injunctive relief, I would join the opinion. Excluding injunctions from the application of § 893.80(1)(b) comports with the purpose and operation of the statute.

## II

¶ 83. If I were to adhere to *Waukesha*, I would hold that the plaintiffs' action against the City should not be dismissed. The plaintiffs have asserted § 1983 claims based on the same factual allegations giving rise to the state law claims and premised on violations of the state public trust doctrine. *See* per curiam op. at 820–21. Dismissing the plaintiffs' § 1983 claims for failure to file a notice of claim would be contrary to the principles articulated in *Felder*, 487 U.S. 131.

¶ 84. In *Felder* the United States Supreme Court stated that "enforcement of the notice-of-claim statute in § 1983 actions brought in state court so interferes with and frustrates the substantive right Congress created that, under the Supremacy Clause, it must yield to the federal interest." *Felder*, 487 U.S. at 151.

## III

¶ 85. Since the court held in the 1994 *Waukesha* decision that Wis. Stat. § 893.80(1)(b) "applies in all actions, not just in tort actions," *Waukesha*, 184 Wis. 2d at 183, 202,[7] this court has decided three other cases in which a claimant's failure to comply with the notice of

---

[7] The *Waukesha* court stated that Wis. Stat. § 893.80(1)(b) explicitly exempts only two causes of action from the notice of claim requirement: medical malpractice actions and actions for the negligent inspection of property. *See Waukesha*, 184 Wis. 2d at 190 n.7.

claim requirement has been challenged.[8] In *Racine*, 216 Wis. 2d at 630, the court strictly adhered to *Waukesha*. The *Racine* court stated that it had "no alternative under [§ 893.80(1)(b)] and case law" but to stringently apply § 893.80(1)(b) to all actions as "our hands are tied by the plain language of § 893.80(1)(b)." *Racine*, 216 Wis. 2d at 628–29.

¶ 86. However, in two cases, including this case, the court carved out exceptions to Wis. Stat. § 893.80(1)(b) and the "all actions" language of *Waukesha*.[9]

¶ 87. What is the collective result of these four decisions? In short, "all actions" means all actions except when the court says otherwise. I cannot discern what governing principle or rule guides the court in recognizing exceptions to the notice of claim statute, and the per curiam opinion offers no guidance for identifying other potential exceptions to the statute.

¶ 88. The importance of clarifying when a notice of claim must be filed under Wis. Stat. § 893.80(1)(b) cannot be overstated. Many cases in Wisconsin courts involve lawsuits in which governmental bodies or their officers, agents or employees are defendants. Between September 1997 and June 1998, the defendants in about one fourth of the cases decided by this court were governmental bodies or their officers, agents or employees. In some of these cases a notice of claim was

---

[8] *See State ex rel. Auchinleck v. Town of LaGrange*, 200 Wis. 2d 585, 547 N.W.2d 587 (1996); *City of Racine v. Waste Facility Siting Bd.*, 216 Wis. 2d 616, 575 N.W.2d 712 (1998); and the present case, *Gillen v. City of Neenah*, 219 Wis. 2d 807, 580 N.W.2d 628 (1998).

[9] *See Auchinleck*, 200 Wis. 2d at 597; *Gillen*, op. at 827.

filed.[10] In other cases, according to the complaint, no notice of claim was apparently filed.[11]

¶ 89. The court of appeals has held that a claimant's failure to comply with Wis. Stat. § 893.80(1)(b) deprives a court of the power to proceed. *See Figgs v. City of Milwaukee,* 116 Wis. 2d 281, 286–87, 342 N.W.2d 254 (Ct. App. 1983), *rev'd on other grounds,* 121 Wis. 2d 44, 357 N.W.2d 548 (1984).[12] In reviewing the court of appeals decision in *Figgs,* this court concluded that the notice of claim filed was sufficient and thus did not reach the question of whether noncompliance with the notice of claim statute would deprive the court of the power to proceed. *See Figgs,* 121 Wis. 2d at 51. This court stated, "If the court of appeals erred in respect to the sufficiency of the claim, as we conclude it did, we need not, for the purpose of deciding this case, explore whether an insufficient notice would deprive the court of subject matter jurisdiction and render futile any assertions by a plaintiff of estoppel or laches." *Figgs,* 121 Wis. 2d at 51.

¶ 90. The per curiam opinion errs in two respects. First, it errs when it states that this court in *Figgs* reached and decided the question whether noncompliance with the notice of claims statute deprives a

---

[10] *See, e.g., Morris v. Juneau County,* 219 Wis. 2d 544, 579 N.W.2d 690 (1998); *Vivid v. Fiedler,* 219 Wis. 2d 765, 580 N.W.2d 644 (1998), 1998).

[11] *See, e.g., Barland v. Eau Claire County,* 216 Wis. 2d 559, 575 N.W.2d 691 (1998); *Sullivan v. Waukesha County,* 218 Wis. 2d 458, 578 N.W.2d 596 (1998).

[12] This court has not yet determined the status of an issue decided in a published court of appeals opinion when the *court of appeals decision is subsequently reversed or affirmed* by this court on other grounds.

circuit court of the power to proceed. See per curiam op. at 825–26. The *Figgs* court did not decide this issue.

¶ 91. Second, the per curiam misunderstands the language it quotes from a footnote in *Figgs*. *See* per curiam op. at 825–26. The *Figgs* footnote merely explains the difference between subject matter jurisdiction and a circuit court's lack of power to proceed when a party has failed to comply with statutory requirements. According to *Figgs*, a circuit court always has subject matter jurisdiction but may not have the competence, that is, the power to proceed, if the statutory requirements are not met. For application of this rule, see e.g., *Sallie T. v. Milwaukee County Dep't of Health & Soc. Serv.*, 219 Wis. 2d 296, 303–04, 581 N.W.2d 182 (1998) (parties' failure to extend a dispositional order resulted in the circuit court, which had subject matter jurisdiction, losing the power, that is the competance, to afford relief to the parties).[13]

¶ 92. Several past cases have construed compliance with the precursor statutes to Wis. Stat. § 893.80(1)(b) to be a condition precedent to the com-

---

[13] In recent years this court has used the term "competence" or "power to proceed" instead of the phrase "subject matter jurisdiction." *See Miller Brewing Co. v. LIRC*, 173 Wis. 2d 700, 705–06 n.1, 495 N.W.2d 660 (1993); *In Interest of B.J.N. and H.M.N.*, 162 Wis. 2d 635, 654 n.15, 656–58, 469 N.W.2d 845 (1991); *Figgs v. City of Milwaukee*, 121 Wis. 2d 44, 51–52 n.6, 357 N.W.2d 548 (1984); *Mueller v. Brunn*, 105 Wis. 2d 171, 176, 313 N.W.2d 790 (1982); *In Interest of L.M.C.*, 146 Wis. 2d 377, 390–92, 430 N.W.2d 352 (Ct. App. 1988).

The critical focus, however, is not on the terminology used to describe a court's power to proceed, but on the effect of noncompliance with a statutory requirement on the court's power to proceed. *See Miller Brewing Co.*, 173 Wis. 2d at 706 n.1; *B.J.N.*, 162 Wis. 2d at 656–57; *L.M.C.*, 146 Wis. 2d at 390–92.

mencement[14] or maintenance[15] of an action, and have treated failure to file a notice of claim as fatal.[16] The past cases are not readily reconcilable on this issue.

¶ 93. In cases involving Wis. Stat. § 893.82, the notice of claim statute applicable to suits against the state or state employees, courts have concluded that failure to give notice is jurisdictional and may not be waived by the defendant's failure to plead noncompliance as an affirmative defense.[17]

¶ 94. It is regrettable that the per curiam opinion has not taken the opportunity today to articulate the

[14] *See, e.g., Foreway Express, Inc. v. Hilbert,* 32 Wis. 2d 371, 372, 145 N.W.2d 668 (1966); *Seifert v. School Dist.,* 235 Wis. 489, 497, 292 N.W. 286 (1940); *Maynard v. DeVries,* 224 Wis. 224, 228, 272 N.W. 27 (1937).

[15] *See, e.g., Schwartz v. City of Milwaukee,* 43 Wis. 2d 119, 128, 168 N.W.2d 107 (1969).

[16] *See Sambs v. Nowak,* 47 Wis. 2d 158, 167, 177 N.W.2d 144 (1970)(refusing to apply the estoppel doctrine to bar a governmental body from asserting defense of noncompliance with the notice of claim statute). *But see Fritsch v. St. Croix Cent. Sch. Dist.,* 183 Wis. 2d 336, 344, 515 N.W.2d 328 (Ct. App. 1994) (applying equitable estoppel to bar a governmental body from using noncompliance with the notice of claim statute as a defense).

[17] *See, e.g., Ibrahim v. Samore,* 118 Wis. 2d 720, 726, 348 N.W.2d 554 (1984); *Oney v. Schrauth,* 197 Wis. 2d 891, 904, 541 N.W.2d 229 (Ct. App. 1995); *J.F. Ahern Co. v. Wisconsin State Bldg. Comm'n,* 114 Wis. 2d 69, 83, 336 N.W.2d 679 (Ct. App. 1983).

Although Wis. Stat. § 893.80(1)(b), the municipal notice of claim statute, and Wis. Stat. § 893.82(3), the state notice of claim statute, have similar purposes, the statutes have significant differences. *See Lewis v. Sullivan,* 188 Wis. 2d 157, 169, 524 N.W.2d 630 (1994)(the notice provision of § 893.82(3) does not apply to injunctive and declaratory relief).

court's governing principle or rule in applying Wis. Stat. § 893.80(1)(b). The court's unpredictable application of § 893.80(1)(b) leaves attorneys and courts guessing about when a notice of claim must be filed and calls into question the status of cases now pending or already decided by the courts.

¶ 95. For the foregoing reasons, I write separately.

¶ 96. I am authorized to state that Justice Janine P. Geske and Justice Ann Walsh Bradley join this concurrence.